[Cite as *HSBC Bank USA, Natl. Trust Co. v. Teagarden*, 2013-Ohio-5816.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| HSBC BANK USA, NATIONAL TRUST COMPANY, AS TRUSTEE FOR MASTR REPERFORMING LOAN TRUST 2005-1, | : | **O P I N I O N** |
| | : | |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO.  2012-T-0091** |
| ROBERT J. TEAGARDEN, et al. | : | |
| Defendants/Third Party Plaintiffs-Appellants, | : | |
| | : | |
| -vs - | : | |
| WELLS FARGO BANK NATIONAL ASSOCIATION, | : | |
| | : | |
| Third Party Defendant. | : | |

Civil Appeal from the Trumbull County Court of Common Pleas, Case No. 2010 CV 2417.

Judgment: Affirmed in part, reversed in part, and remanded.


*Scott A. King* and *Terry W. Posey, Jr.,* Thompson Hine, L.L.P., Austin Landing 1, 10050 Innovation Drive, Suite 400, Dayton, OH 45342 and *Matthew I. McKelvey,* Lerner, Sampson & Rothfuss, 120 East Fourth Street, Suite 800, P.O. Box 5480, Cincinnati, OH 45202 (For Plaintiff-Appellee).

*Philip D. Zuzolo* and *Patrick B. Duricy,* Zuzolo Law Office, LLC, 700 Youngstown-Warren Road, Niles, OH 44446 (For Defendants/Third Party Plaintiffs-Appellants).


DIANE V. GRENDELL, J.

{¶1} Defendants-appellants, Robert J. Teagarden and Shelley R. Teagarden, appeal two Judgment Entries of the Trumbull County Court of Common Pleas, dismissing the Teagardens' counterclaims and granting summary judgment in favor of plaintiff-appellee, HSBC Bank USA, National Trust Company. The issues before this court are whether the original lender may be a debt collector for the purposes of the Fair Debt Collection Practices Act (FDCPA) when the debt is assigned to a third party; whether the one-year statute of limitations for FDCPA actions precludes claims based on false affidavits filed in a prior foreclosure action; whether there is justifiable reliance on false affidavits to support a fraudulent misrepresentation claim when the veracity of the affidavits was contested; whether the failure to comply with federal mortgage servicing guidelines may sustain a cause of action for breach of contract; whether the term "branch office" as used in federal regulations refers only to offices with qualified mortgage servicing personnel; and whether actual damages are a necessary element to state a valid claim for a violation of the Real Estate Settlement Procedures Act (RESPA). For the following reasons, we affirm in part and reverse in part the Judgments of the court below.

{¶2} On September 13, 2010, HSBC Bank filed a Complaint in Foreclosure and for Reformation of Deed against the Teagardens and others[1] in the Trumbull County Court of Common Pleas. HSBC Bank alleged that it was the holder of a note secured by a mortgage, executed by the Teagardens, and that there is a balance of $72,764.05 due on the note.

---

1. Other defendants, not parties to this appeal, included: the Trumbull County Treasurer, the United States of America, and Alan D. York.

{¶3} On December 8, 2010, the Teagardens filed their Answer, Affirmative Defenses, & Counterclaim. The Teagardens counterclaimed against HSBC Bank and third party defendant-appellee, Wells Fargo Bank, N.A., as the servicing agent for HSBC Bank. The Teagardens raised claims under the FDCPA and the Ohio Consumer Sales Practices Act (CSPA), and for fraudulent misrepresentation, breach of contract, and abuse of process.

{¶4} On February 12, 2011, HSBC Bank and Wells Fargo filed a Motion to Dismiss the Teagardens' Counterclaim.

{¶5} On July 5, 2011, the Teagardens filed an Amended Answer, Affirmative Defenses, & Counterclaim, adding an additional claim for violation of the RESPA.

{¶6} On July 18, 2011, HSBC Bank and Wells Fargo filed a Motion to Dismiss the Teagardens' Amended Counterclaim.

{¶7} On November 2, 2011, the trial court issued a Judgment Entry, granting HSBC Bank and Wells Fargo's Motion to Dismiss with respect to the Teagardens' counterclaims for violations of the FDCPA and CSPA, fraudulent misrepresentation, and breach of contract.

{¶8} On November 18, 2011, HSBC Bank and Wells Fargo filed their Reply to Amended Counterclaim.

{¶9} On August 7, 2012, HSBC Bank and Wells Fargo filed a Motion for Summary Judgment.

{¶10} On October 18, 2012, the trial court issued a Judgment Entry, granting HSBC Bank and Wells Fargo summary judgment with respect to the Teagardens' counterclaims for abuse of process and violation of the RESPA. The court further found

3

that HSBC Bank was entitled to judgment on the note in the amount of $72,764.05, plus interest. The court did not find that foreclosure of the note was appropriate, "until the Court determines which of the costs, advances, and other charges requested by the Plaintiff [HCBS Bank] are allowable in the interest of justice."

{¶11} On November 8, 2012, the Teagardens filed their Notice of Appeal. On appeal, they raise the following assignments of error:

{¶12} "[1.] The trial court erred by dismissing the appellants' counterclaims under the Fair Debt Collection Practices Act, Ohio Consumer Sales Practices Act, Fraudulent Misrepresentation, and Breach of Contract."

{¶13} "[2.] The trial court erred by granting summary judgment in favor of appellees as to their fulfillment of all conditions precedent and against appellants as to the affirmative defense regarding compliance with the loss mitigation guidelines."

{¶14} "[3.] The trial court erred by granting summary judgment in favor of appellees on appellants' claim under the Real Estate Settlement Procedures Act."

{¶15} Under the first assignment of error, the Teagardens challenge the dismissal of their counterclaims for violations of the FDCPA, violations of the CSPA, fraudulent misrepresentation, and breach of contract, pursuant to HSBC Bank and Wells Fargo's Motion to Dismiss.[2]

{¶16} Under Ohio's Civil Rules, a defendant may plead the "failure to state a claim upon which relief can be granted" by motion. Civ.R. 12(B)(6). "In order for a court to dismiss a complaint for failure to state a claim upon which relief can be granted (Civ.R. 12(B)(6)), it must appear beyond doubt from the complaint that the plaintiff can

---

2. On May 7, 2013, the Teagardens filed notice that they were withdrawing their claims regarding the CSPA.

4

prove no set of facts entitling him to recovery." *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus. In making this determination, all factual allegations contained in the complaint must be presumed true and the non-moving party is entitled to the benefit of all reasonable inferences. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988).

{¶17} The Teagardens' Amended Counterclaim alleged that HSBC Bank and Wells Fargo violated the FDCPA by engaging in harassing and abusive conduct (15 U.S.C. 1692d), making false and misleading representations (15 U.S.C. 1692e), and using unfair or unconscionable means to collect a debt (15 U.S.C. 1692f).

{¶18} In order to establish a claim under the FDCPA, the "defendant must be a 'debt collector' as defined by the Act." *Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir.2012); *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir.2003) ("[a]s a matter of law, liability under §§ 1692d and 1692e [and 1692f] can only attach to those who meet the statutory definition of a 'debt collector'").

{¶19} A "debt collector" is defined by the FDCPA as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. 1692a(6). Excluded from this definition of a "debt collector," is "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity * * * concerns a debt which was originated by such person." 15 U.S.C. 1692a(6)(F)(ii).

5

{¶20} In the present case, Wells Fargo was the original lender, i.e., originator of the debt, of $76,401 to the Teagardens, and identified as such in the note creating the debt. Therefore, Wells Fargo does not meet the statutory definition of a "debt collector" and cannot be held liable under the FDCPA.

{¶21} The Teagardens argue that, even if Wells Fargo "is considered the formal creditor in the original note," it "is now (and was) collecting debt that is owned by HSBC." The reasoning behind this argument, however, completely circumvents the plain language of the FDCPA, which presupposes that a person is "collecting * * * any debt * * * owed or due another." Under the Teagardens' interpretation, the exclusion under (F)(ii) is rendered meaningless. As other courts have concluded, the fact that the original creditor transferred the debt to another party and subsequently attempts to collect the debt on behalf of the other party does not render the original creditor a "debt collector" for the purposes of the FDCPA. *Neff v. Flagstar Bank, FSB*, S.D.Ohio No. 2:11-cv-1136, 2013 U.S. Dist. LEXIS 104536, 11 (July 25, 2013) (the "transfer and reacquisition of the debt is [not] legally relevant" to the original creditor's exempt status under the FDCPA); *Capital One Bank (USA) v. Rhoades*, 8th Dist. Cuyahoga No. 93968, 2010-Ohio-5127, 2010 Ohio App. LEXIS 4313, 8 ("Capital One is the original creditor, and as such, * * * cannot be in violation of the FDCPA").

{¶22} The Teagardens argue, in the alternative, that Wells Fargo is subject to the FDCPA as a creditor who, "in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. 1692a(6).

{¶23} "A creditor collecting its own debt becomes subject to the FDCPA 'when it uses a name that implies that third party [sic] is involved in collecting its debts, "pretends to be someone else" or "uses a pseudonym or alias."'" (Citations omitted.) *Wolfe v. Bank One Corp.*, 433 F.Supp.2d 845, 847 (N.D.Ohio 2005); *Hayes v. Asset Recovery Mgt. Group, Ltd.*, N.D.Ohio No. 3:10CV1098, 2011 U.S. Dist. LEXIS 89920, 9 (Aug. 12, 2011) ("[t]o state a claim under the 'false name' exception, plaintiff must allege the defendants misrepresented themselves a[s] independent debt collectors during one or more of the abusive actions allegedly violating the FDCPA").

{¶24} In the present case, Wells Fargo consistently dealt with the Teagardens as Wells Fargo Home Mortgage, Inc., Wells Fargo Bank, N.A., or Wells Fargo Equity Enhancement Program. The Amended Counterclaim identifies Wells Fargo Home Mortgage as "a division" of Wells Fargo Bank. Wells Fargo Equity Enhancement Program is described therein as a payment plan that the Teagardens "were on" which "required that [they] pay half of their monthly payment every two weeks resulting in an additional equity payment every year." The Teagardens fail to allege they ever believed any of these entities was a third party independent of Wells Fargo Home Mortgage, the lender identified in the note. The Amended Counterclaim does allege that Wells Fargo misrepresented that it was the "holder of the loan" at a time when it was performing "as the mortgage servicer." This allegation, however, does not raise a reasonable inference, even among the least sophisticated of consumers, that Wells Fargo used a false name to create the impression that another party was attempting to collect the debt.

**{¶25}** Since the facts alleged in the Teagardens' Amended Counterclaim demonstrate that Wells Fargo is not a "debt collector" for the purposes of the FDCPA, we need not consider whether any action taken by Wells Fargo violates the FDCPA.

**{¶26}** Unlike Wells Fargo, HSBC Bank was found to be subject to the provisions of the FDCPA. The Teagardens' Amended Counterclaim alleged that, in a prior foreclosure action filed in March 2008 (Trumbull C.P. No. 2008 CV 00621), HSBC Bank submitted an affidavit to the trial court falsely stating that it was the holder of the note as of 2005. The 2008 foreclosure action was dismissed without prejudice on the grounds that HSBC Bank lacked standing to bring the action.

**{¶27}** In the present case, the trial court found that the statements made in the affidavits from the 2008 foreclosure action were entitled to absolute witness immunity, as set forth in *Briscoe v. LaHue*, 460 U.S. 325, 335, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983) ("the common law provided absolute immunity from subsequent damages liability for all persons * * * who were integral parts of the judicial process"). The court also noted, and the Teagardens' counsel conceded at oral argument, that the purportedly false affidavits on which the FDCPA claims were based were filed outside of the one-year limitations period for such claims. 15 U.S.C. 1692k(d).

**{¶28}** The Teagardens counter that their FDCPA claims were not solely based on the false affidavits, but also "for attempts to collect improper and illegal fees and costs." The Teagardens' argument does not resolve the statute of limitations problem, as the only illegal fees and costs identified in their Counterclaim are those associated with the prior foreclosure actions. Specifically, the Counterclaim alleged that Wells Fargo and HSBC Bank "knowingly submit[ed] false affidavits to falsely establish

8

standing in order to defeat the Defendants['] defenses and complete the foreclosure in order to profit from improper fees and costs." Since the claims based on the affidavits are time-barred, claims based on the underlying fees and costs are likewise time-barred and the issue of witness immunity is rendered moot.

{¶29} The third count of the Teagardens' Amended Counterclaim was for fraudulent misrepresentation. The elements of a claim for fraudulent misrepresentation are:

{¶30} (1) a representation, or where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying on it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance.

(Citation omitted.) *Bencivenni v. Dietz*, 11th Dist. Lake No. 2012-L-127, 2013-Ohio-4549, ¶ 43.

{¶31} The Teagardens contend that the trial court improperly dismissed their counterclaims for fraudulent misrepresentation against Wells Fargo and HSBC Bank by taking judicial notice of the 2008 foreclosure action. In dismissing this claim, the court stated:

{¶32} Having taken judicial notice of the Teagardens' position in Case 08 CV 621, the Court does not agree that there was any reliance by

9

the Teagardens upon any representation of HSBC or Wells Fargo in that case. In fact, the Teagardens filed counterclaims in that case and disputed just about everything represented by HSBC. Ultimately, the Teagardens['] position on standing was proven correct and that case was dismissed.

**{¶33}** We need not consider whether the trial court's taking judicial notice of the Teagardens' position in the 2008 foreclosure action was proper, since the allegations of the Amended Complaint conclusively demonstrate the same lack of reliance on the assertions of the false affidavits. The Amended Complaint asserts that, despite the false affidavits, "[t]he Teagardens fought the [2008] foreclosure based on standing and were successful and the Court dismissed the [2008] foreclosure without prejudice." With respect to reliance, the Amended Complaint sets forth the following:

**{¶34}** The Teagardens have a foreseeable and justifiable reliance that Wells Fargo will engage in the litigation process in good faith and not fabricate evidence, including but not limited to the true holder of the loan, to further their own case for justified profit. The Teagardens relied on these affidavits in creating a defense to the foreclosure and prosecuting their counterclaims. These false statements increased the fees and costs assessed to their own loan and also increased their own attorney fees and costs in defending the foreclosure.

**{¶35}** Reliance on Wells Fargo's good faith and honesty or on the substance of the affidavits as the basis for defenses/counterclaims is not the sort of detrimental

10

reliance essential to state a claim for fraudulent misrepresentation. The Teagardens cannot claim to have relied on Wells Fargo's false representations regarding standing to their detriment when they actively contested the veracity of those statements. *N. Shore Neurological Serv., Inc. v. Midwest Neuroscience, Inc.*, 9th Dist. Lorain No. 08CA0009373, 2009-Ohio-2429, ¶ 13 ("[a] person cannot claim to have justifiably relied on something he knew to be false"); *compare Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 506 (6th Cir.2003) ("plaintiff's negligent and/or intentional misrepresentation claims concerning such an omission necessarily fail," where, "[p]er plaintiff's own concession, * * * [the] claim is not that plaintiff relied on [the misrepresentation] by acting to its detriment, but that defendant acted to plaintiff's detriment in perpetrating [the misrepresentation]"). Accordingly, it is demonstrable from the face of the Amended Complaint that the Teagardens failed to plead a valid claim for fraudulent misrepresentation.

{¶36} The Teagardens' breach of contract claim was based on Wells Fargo's and HSBC Bank's failure to follow the loss mitigation guidelines mandated by the Department of Housing and Urban Development (HUD) as part of the single family mortgage insurance program. The trial court dismissed the breach of contract claim on the grounds that no private right of action exists for violations of the National Housing Act.

{¶37} On the issue of government insured mortgages, federal law generally holds that:

{¶38} HUD regulations require a mortgagee to undertake certain actions before accelerating a loan for payment default, including giving a

11

default notice and in many cases attending a face-to-face meeting with the mortgagor before a third month's default. 24 C.F.R. § 203.602 and § 203.604. While these regulations do not provide a mortgagor with a private right of action, *Mitchell v. Chase Home Finance LLC*, 06-CV-2099-K, 2008 U.S. Dist. LEXIS 17040, 2008 WL 623395, at *3 (N.D. Tex. March 4, 2008), if they are incorporated into the various loan documents * * *, they become enforceable by the parties to the loan documents. *Sinclair v. Donovan*, 11-cv-00010, 2011 U.S. Dist. LEXIS 128220, 2011 WL 5326093 (S.D. Ohio Nov. 4, 2011) * * *.

*Silveira v. Wells Fargo Bank, N.A.*, Bankr.Mass. No. 11-44812-MSH, 2013 Bankr. LEXIS 1904, 45 (May 3, 2013).

**{¶39}** The precedents, both federal and state, further recognize that "[a] failure of a mortgagee to adhere to the HUD servicing requirements in the regulations can be an affirmative defense to foreclosure, but does not form the basis for a claim." *Wells Fargo Bank, N.A. v. Favino*, N.D.Ohio No. 1:10 CV 571, 2011 U.S. Dist. LEXIS 35618, 36 (Mar. 31, 2011); *BAC Home Loans Serv., LP v. Taylor*, 2013-Ohio-355, 986 N.E.2d 1028, ¶ 17 (9th Dist.).

**{¶40}** In the present case, the original note expressly incorporated federal regulations, providing: "In many circumstances regulations issued by the Secretary [of Housing and Urban Development] will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations."

{**¶41**} The Teagardens contend that, although the HUD servicing requirements do not create a private right of action, they may, when duly incorporated into a mortgage contract, serve as the basis for a cause of action under state law. This distinction between a private right of action under federal law and a cause of action arising under state law has been recognized in several decisions relied upon by the Teagardens. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 581 (7th Cir.2012) ("[t]he absence of a private right of action from a federal statute provides no reason to dismiss a claim under a state law just because it refers to or incorporates some element of the federal law"); *Ortega v. Wells Fargo Bank, N.A.*, N.D.Ohio No. 3:11CV01734, 2012 U.S. Dist. LEXIS 11409, 17 (Jan. 31, 2012) ("[p]laintiff's contract law claims do not * * * find their foundation in promulgated [Home Affordable Modification Program] guidelines, or from any federal law," but "arise from protections the state of Ohio has afforded to its citizens in their contractual dealings with other persons and entities").

{**¶42**} In a factually similar situation, the note and mortgage "at issue * * * unambiguously provide[d] that the rights of the lender in the cause of default by the borrower are 'limited by regulations of the Secretary [of Housing and Urban Development or his or her designee].'" *Taylor*, 2013-Ohio-355, at ¶ 19. The court of appeals found the argument that HUD regulations did not create a private right of action to be irrelevant: "by contract, [the mortgagee] was required to comply with the HUD regulations governing acceleration and foreclosure, and the [mortgagors] were entitled to use any failure to do so as a shield in the subsequent foreclosure case." *Id.*

{**¶43**} The Teagardens' breach of contract claim, nevertheless, fails under state law. There is abundant state law precedent that the failure to comply with HUD

regulations, when incorporated into the mortgage contract, constitutes a defense to the foreclosure action (similar to notice provisions) rather than a basis for a breach of contract claim. *Id.* at ¶ 17; *U.S. Bank, N.A. v. Detweiler*, 191 Ohio App.3d 464, 2010-Ohio-6408, 946 N.E.2d 777, ¶ 53 (5th Dist.) ("[t]he HUD regulations, incorporated within the terms of the default and/or acceleration provisions, include those requirements found in 24 CFR § 203.602 and 24 CFR § 203.604," and, "therefore, are conditions precedent"); *U.S. Bank, N.A. v. Stewart*, 2nd Dist. Montgomery No. 21775, 2007-Ohio-5669, ¶ 73 ("the HUD regulations also contained additional requirements for foreclosure"); *GMAC Mtge. of Pennsylvania v. Gray*, 10th Dist. Franklin No. 91AP-650, 1991 Ohio App. LEXIS 6004, 10 (Dec. 10, 1991) ("[a] mortgagee who participates in the [Mortgage Insurance Program] is required to comply with certain guidelines in dealing with a mortgagor in default").

{¶44} We further note that the HUD regulations relied upon by the Teagardens as the basis for their breach of contract action would not become operative until, and unless, the Teagardens were in default under the mortgage. This fact alone demonstrates that the failure to comply with those regulations cannot support an action for breach. An essential element of a claim for breach of contract under Ohio law is "performance by the plaintiff." *Lapping v. HM Health Servs.*, 11th Dist. Trumbull No. 2000-T-0061, 2001 Ohio App. LEXIS 5634, 8 (Dec. 14, 2001). To claim that Wells Fargo breached the HUD regulations to accelerate the mortgage, the Teagardens would necessarily have to be in default and, therefore, could not claim to have performed under the mortgage. *Ogle v. Bank of Am., N.A.*, 924 F.Supp.2d 902, 915 (N.D.Ohio 2013) (by "admittedly [having] stopped making mortgage payments * * * [t]he Ogles

14

have therefore failed to plead performance and accordingly, have failed to adequately plead a breach of contract claim"); *Favino*, 2011 U.S. Dist. LEXIS 35618, at 28 ("[s]ince Favino has failed to allege facts to prove his own performance, he cannot satisfy the second element of a breach of contract claim").  Accordingly, the failure to comply with HUD regulations may be raised as a defense in a foreclosure action, but does not support an action for breach.

{¶45}  The first assignment of error is without merit.

{¶46}  In the second assignment of error, the Teagardens argue the trial court erred in granting summary judgment in favor of HSBC Bank where a genuine issue of material fact existed as to whether HSBC Bank complied with the HUD regulations, specifically Section 203.604 of Title 24 of the Code of Federal Regulations.

{¶47}  Pursuant to Civil Rule 56(C), summary judgment is proper when (1) the evidence shows "that there is no genuine issue as to any material fact" to be litigated, (2) "the moving party is entitled to judgment as a matter of law," and (3) "it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor."   A trial court's decision to grant summary judgment is reviewed by an appellate court under a de novo standard of review.  *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).  "Under this standard, the reviewing court conducts an independent review of the evidence before the trial court and renders a decision de novo, i.e., as a matter of law and without deference to the conclusions of

15

the lower court." (Citation omitted.) *U.S. Bank Natl. Assn. v. Martz*, 11th Dist. Portage No. 2013-P-0028, 2013-Ohio-4555, ¶ 10.

{¶48} "It is the intent of the Department [of Housing and Urban Development] that no mortgagee shall commence foreclosure or acquire title to a property until the [mortgage servicing] requirements of this subpart have been followed." 24 C.F.R. 203.500; 24 C.F.R. 203.606(a) ("[b]efore initiating foreclosure, the mortgagee must ensure that all servicing requirements of this subpart have been met").

{¶49} (b) The mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid. If default occurs in a repayment plan arranged other than during a personal interview, the mortgagee must have a face-to-face meeting with the mortgagor, or make a reasonable attempt to arrange such a meeting within 30 days after such default and at least 30 days before foreclosure is commenced * * *. (c) A face-to-face meeting is not required if:

{¶50} (1) The mortgagor does not reside in the mortgaged property,

{¶51} (2) The mortgaged property is not within 200 miles of the mortgagee, its servicer, or a branch office of either,

{¶52} (3) The mortgagor has clearly indicated that he will not cooperate in the interview,

16

**{¶53}** (4) A repayment plan consistent with the mortgagor's circumstances is entered into to bring the mortgagor's account current thus making a meeting unnecessary, and payments thereunder are current, or

**{¶54}** (5) A reasonable effort to arrange a meeting is unsuccessful.

**{¶55}** (d) A reasonable effort to arrange a face-to-face meeting with the mortgagor shall consist at a minimum of one letter sent to the mortgagor certified by the Postal Service as having been dispatched. Such a reasonable effort to arrange a face-to-face meeting shall also include at least one trip to see the mortgagor at the mortgaged property, unless the mortgaged property is more than 200 miles from the mortgagee, its servicer, or a branch office of either, or it is known that the mortgagor is not residing in the mortgaged property.

24 C.F.R. 203.604.

**{¶56}** The evidence before the trial court was that, on April 16, 2010 (about five months before HSBC Bank filed the underlying foreclosure), Wells Fargo sent a letter to the Teagardens, advising them as follows: "Your mortgage loan is in default. Please contact us immediately to discuss your situation. We would like to meet with you to review your financial situation and determine possible options to assist you in bringing your loan current." As to whether the Teagardens received this letter, Shelley Teagarden testified: "I just can't remember."

17

{¶57} Robert Bateman, an employee of Wells Fargo, testified that "Wells Fargo, as servicer for HSBC Bank USA, * * * does not have a branch servicing office with personnel trained in debt collection under HUD's Loss Mitigation policies within 200 miles of the [subject] property." Sarah M. Twyford, a paralegal for the Teagardens' counsel, testified and submitted evidence of eleven "Wells Fargo Home Mortgage" offices within 100 miles of the subject property.

{¶58} We find that a genuine issue of material fact exists as to whether Wells Fargo complied with the requirement to have a face-to-face meeting with the Teagardens prior to filing the foreclosure action. In particular, there was no evidence in the record that the letter sent by Wells Fargo was certified by the postal service, as required in 24 C.F.R. 203.604(d); nor was there evidence that a trip was made to see the mortgagors at the mortgaged property. Therefore, the grant of summary judgment in HSBC Bank's favor was inappropriate. *Washington Mut. Bank v. Mahaffey*, 154 Ohio App.3d 44, 2003-Ohio-4422, 796 N.E.2d 39, ¶ 53 (2nd Dist.) ("the evidence in the record fails to establish, as a matter of law, that the bank has satisfied the face-to-face meeting requirements set forth in C.F.R, Section 203.604 * * *[;] [a]ccordingly, there is a genuine issue of material fact concerning Mahaffey's equitable defense alleging the bank's failure to comply with that regulation").

{¶59} HSBC Bank argues that, as a matter of law, it is exempted from the requirement of holding a face-to-face meeting with the Teagardens since the mortgaged property is not within 200 miles of a Wells Fargo branch office. HSBC Bank relies on a webpage, General Servicing Frequently Asked Questions, maintained by HUD, which

18

explains what is meant by the 200-mile exception. HSBC Bank maintains that Question 11 on the FAQ webpage, provided as follows:

**{¶60}** The Department is aware that many Mortgagees maintain "branch offices" that deal only with loan origination and some of these offices may only be staffed part-time. For the most part, individuals that staff an origination office are not familiar with servicing issues and are not trained in debt collection or HUD's Loss Mitigation Program. The Department has always considered that the face-to-face meeting must be conducted by staff that is adequately trained to discuss the delinquency and the appropriate loss mitigation options with the mortgagor. Therefore, for the purpose of this discussion, the face-to-face meeting requirement referenced in 24 CFR 203.604 relates only to those mortgagors living within a 200-mile radius of a servicing office.

According to HSBC Bank, "[w]hile the Teagardens submitted a printout stating that there were multiple Wells Fargo offices within 200 miles of the Property, they submitted no evidence that any of these offices was a mortgage servicing office under 24 C.F.R. § 203.604."

**{¶61}** We reject HSBC Bank's interpretation of a "branch office" for several reasons. Initially, the webpage cited by Wells Fargo, as of this writing, does not contain a Question 11 or any explanation of what is meant by a "branch office." Nothing on the webpage cited currently requires that the branch office be a servicing office with

19

personnel trained in HUD mitigation policies. HUD.gov, General Servicing Frequently Asked Questions,

http://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/sfh/nsc/faqgnsrv (accessed December 19, 2013). Moreover, several Ohio appellate courts have rejected the interpretation of "branch office" formerly provided by the FAQ webpage. *Wells Fargo v. Phillabaum*, 192 Ohio App.3d 712, 2011-Ohio-1311, 950 N.E.2d 245, ¶ 13-16 (4th Dist.); *Wells Fargo Bank, N.A. v. Isaacs*, 1st Dist. Hamilton No. C-100111, 2010-Ohio-5811, ¶ 10. Finally, we find nothing particularly ambiguous about the term "branch office" or authoritative about a webpage addressing frequently asked questions.

{¶62} Wells Fargo next argues that the face-to-face meeting requirement was satisfied by virtue of a special forbearance agreement, discussed with the Teagardens prior to filing a first foreclosure action in 2006, and by virtue of mediations which occurred during the pendency of a second foreclosure action in 2008. We disagree. Both of the prior foreclosure actions were ultimately dismissed without prejudice. Whatever interactions occurred with the Teagardens with respect to those actions did not satisfy the meeting requirement with respect to the third foreclosure, filed in 2010.

{¶63} Lastly, Wells Fargo asserts that failure to comply with the servicing guidelines only precludes foreclosure of the mortgage (which the trial court did not order in its Judgment), but has no bearing on the money owed under the note. Again, we disagree. The terms of the note state that, in the event of default, the lender may require immediate payment in full of the principal balance, "except as limited by regulations of the Secretary in the case of default payments," and acceleration of the note is not authorized "when not permitted by HUD regulations." Although the HUD

regulations properly limit the lender's right to foreclose the mortgage, here, they are expressly incorporated as a limit on the lender's right to accelerate the note. *Taylor*, 2013-Ohio-355, at ¶ 18 ("the HUD regulations were incorporated into the note and made a part of the contract"); *Christenson v. CitiMortgage, Inc.*, D.Colo. No. 12-cv-02600-CMA-KLM, 2013 U.S. Dist. LEXIS 133445, 22 (Sept. 18, 2013) ("[t]he Court agrees with the majority view that compliance with the HUD regulations is a condition which must occur prior to the lender being able to accelerate and foreclose the debt and that the borrower may use any failure to comply with the regulations 'as a shield in the subsequent foreclosure case'") (citations omitted).

{¶64} The second assignment of error is with merit.[3]

{¶65} In their third assignment of error, the Teagardens contend that the trial court erred by granting summary judgment in favor of Wells Fargo on their RESPA claim.

{¶66} Under RESPA, a loan servicer has the duty to respond to a borrower's qualified written request stating the borrower's belief that the account balance is in error. 12 U.S.C. 2605(e)(1). Specifically, "the servicer shall * * * make appropriate corrections in the account of the borrower * * * and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);" or "after conducting an investigation, provide the borrower with a written explanation or

---

3. We note that HSBC Bank maintained that compliance with the HUD regulations is an affirmative defense for which the borrower bears the burden of proof. We further acknowledge that some courts have treated the issue of compliance as an affirmative defense while others have treated it as a condition precedent. *E.g.*, *Favino*, 2011 U.S. Dist. LEXIS 35618, at 36 (affirmative defense); *Wells Fargo Bank, N.A. v. Hazel*, 10th Dist. Franklin No. 11AP-1061, 2012-Ohio-5770, ¶ 13 (condition precedent). Given the procedural peculiarities of the present case, i.e., the Teagardens raised the issue of compliance as a counterclaim, and the fact that both parties submitted evidentiary materials regarding compliance, this court need not, and does not, express any opinion on the issue.

clarification that includes[,] * * * to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer." 12 U.S.C. 2605(e)(2)(A) and (B).

{¶67} In the present case, the Teagardens sent Wells Fargo a qualified written request on May 3, 2010, disputing various fees and charges associated with two prior foreclosure actions. On May 28, 2010, Wells Fargo responded that "[t]he terms of the Note and Mortgage/Deed of Trust outline the conditions under which we can accelerate the collection of the debt," and, "[a]s these conditions were met, our foreclosure action is valid."

{¶68} The Teagardens' claim fails, however, because they failed to present any evidence of damages as a result of the alleged RESPA violation. "Courts have determined that actual damages must be pled as part of any RESPA claim and any alleged loss must be related to the alleged RESPA violation itself." *Mattison v. PNC Bank, N.A.*, S.D.Ohio No. 3:13-cv-061, 2013 U.S. Dist. LEXIS 106721, 23 (July 30, 2013) (cases cited). The Teagardens broadly claim that their actual damages include "foreclosure related expenses and non-economic damage, out-of-pocket expenses, attorneys' fees and costs, aggravation, frustration, embarrassment, loss of time, loss of enjoyment of life, and stress." None of these purported damages are connected in any way to Wells Fargo's response to the Teagardens' qualified written request; rather, they derive from the years spent litigating the preceding foreclosure actions. The Teagardens have presented no evidence or convincing argument that the damages alleged were suffered as a result of Wells Fargo's terse explanation as to why it believed the prior foreclosure actions were justified. *Anderson v. Barclays Capital Real*

22

*Estate, Inc.*, N.D.Ohio No. 3:09CV2335, 2010 U.S. Dist. LEXIS 68327, 19 (June 18, 2010) ("[t]he damages alleged must * * * be damages suffered '*as a result of the failure*' to satisfy a RESPA duty") (citation omitted). Summary judgment on the RESPA claim was properly entered.

{¶69} The third assignment of error is without merit.

{¶70} For the foregoing reasons, the Judgment Entries of the Trumbull County Court of Common Pleas, dismissing the Teagardens' counterclaims, are affirmed; the Entry entering summary judgment in favor of HSBC Bank on the note is reversed, and this matter is remanded for further proceedings consistent with this opinion. Costs to be taxed against the parties equally.


THOMAS R. WRIGHT, J., concurs,

COLLEEN MARY O'TOOLE, J., concurs in part, dissents in part, with a Concurring/Dissenting Opinion.

_____


COLLEEN MARY O'TOOLE, J., concurs in part, dissents in part, with a Concurring/Dissenting Opinion.

{¶71} The majority only finds appellants' second assignment of error with merit. Because this writer finds all three of appellants' assignments well-taken, I concur in part and dissent in part.

{¶72} Under their first assignment of error, appellants argue in their appellate brief that the trial court erred by dismissing their counterclaims under the FDCPA,

CSPA, fraudulent misrepresentation, and breach of contract. However, after appellants filed their brief and before oral arguments in this matter, they filed a notice to withdraw their CSPA claims. Thus, those claims will not be considered.

{¶73} This court stated in *Andrews v. Lampert*, 11th Dist. Lake No. 2002-L-022, 2003-Ohio-2370, ¶11:

{¶74} "A defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted, according to Civ.R. 12(B)(6). An appellate court's review of a dismissal under Civ.R. 12(B)(6) is de novo. *West v. Sheets*, 11th Dist. No. 2001-L-183, 2002-Ohio-7143, at ¶9, citing *Mitchell v. Speedy Car X, Inc.* (1998), 127 Ohio App.3d 229, 231 * * *. In order for a court to dismiss a complaint under Civ.R. 12(B)(6), "'(* * *) it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery.'" *Taylor v. London* (200), 88 Ohio St.3d 137, 139 * * *, quoting *O'Brien v. Univ. Comm. Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, * * *, syllabus. "'A complaint should not be dismissed for failure to state a claim merely because the allegations do not support the legal theory on which the plaintiff relies. Instead, a trial court must examine the complaint to determine if the allegations provide for relief on any possible theory.'" *Firstmerit Corp. v. Convenient Food Mart, Inc.* (Mar. 7, 2003), 11th Dist. No. 2001-L-226, 2003-Ohio-1094, at ¶7, quoting *Fahnbulleh v. Strahan*, 73 Ohio St.3d 666, 667, * * * (1995). Thus, 'in construing a complaint upon a motion to dismiss for failure to state a claim, we must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party.' *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, * * *." (Parallel citations omitted.)

24

{¶75} Appellants present six issues under their first assignment of error. Under their first issue, appellants argue that the trial court erred in granting dismissal of their counterclaim for FDCPA violations. They maintain that both HSBC and Wells Fargo are debt collectors and allege that the court erred in finding only HSBC subject to the FDCPA.

{¶76} Under the FDCPA, a "debt collector" is defined as "any person who * * * regularly collects or attempts to collect * * * debts owed or due or asserted to be owed or due another." 15 U.S.C. 1692a(6). The statutory definition of "debt collector" excludes:

{¶77} "[A]ny person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor." 15 U.S.C. 1692a(6)(F).

{¶78} The record establishes that Wells Fargo was the original creditor. Due to that fact, the trial court held that Wells Fargo could not be subject to the provisions of the FDCPA. However, Wells Fargo, even as the formal creditor in the original note, can be a "debt collector" as it relates to appellants' FDCPA claims. *See Pressman v. Southeastern Fin. Group, Inc.*, E.D. Pa. Civil Action No. 94-5244, 1995 U.S. Dist. LEXIS 17961, *9-10 (Nov. 30, 1995) (holding that there was an issue of fact as to whether a financing company was a creditor or a debt collector where, although the financing

company was the formal creditor in the original note signed by the consumer, the debt was in fact owed to another party, and the financing company in substance collected the debt for that party, remitting funds to it only as and when they were received from the consumer debtor).

{¶79} Under *Pressman,* although Wells Fargo was the original creditor, it is now, and was, collecting a debt owned by HSBC. Thus, a reasonable factfinder could conclude that Wells Fargo is a debt collector covered by the FDCPA. I believe that appellants pled facts that would establish their entitlement to relief under the FDCPA against both HSBC and Wells Fargo.

{¶80} Appellants also allege that Wells Fargo is subject to the FDCPA under the "false name" provision. The FDCPA treats a creditor as a debt collector if the creditor, "in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. 1692a(6). "A creditor collecting its own debt becomes subject to the FDCPA 'when it uses a name that implies that [a] third party is involved in collecting its debts, "pretends to be someone else" or "uses a pseudonym or alias."'" *Wolfe v. Bank One Corp.*, 433 F.Supp.2d 845, 847 (N.D.Ohio 2005), citing *Maguire v. Citicorp Retail Services, Inc.,* 147 F.3d 232, 235 (2d Cir.1998) (quoting *Villarreal v. Snow,* 1996 U.S. Dist. LEXIS 11930, 1996 WL 473386 at *3 (N.D.Ill. Aug. 19, 1996).

{¶81} Whether Wells Fargo is a creditor using names that suggest the involvement of third parties must be evaluated from the standpoint of the least sophisticated consumer, an objective test used to judge whether a communication or other conduct violates the FDCPA. *See Harvey v. Great Seneca Fin. Corp.*, 453 F.3d

324, 329 (6th Cir.2006). "The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd. This standard is consistent with the norms that courts have traditionally applied in consumer-protection law." *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir.1993).

**{¶82}** The names or programs in this case include "Wells Fargo Bank N.A.," or its former name "Wells Fargo Home Mortgage, Inc.," and "Wells Fargo Equity Enhancement Program." It is reasonable for appellants, or any least sophisticated consumer, to believe a third party at some point or another was collecting their loan, as the names or programs used throughout the collection process suggest the involvement of a possible third party collector. Thus, this writer determines that appellants' "false name" theory is well-taken.

**{¶83}** I believe appellants' first issue is with merit.

**{¶84}** Under their second issue, appellants contend in their appellate brief that the witness immunity doctrine does not preclude a finding of liability under the FDCPA, CSPA, and fraudulent misrepresentation. They maintain that Wells Fargo and HSBC are not protected by witness immunity from FDCPA violations for submitting false affidavits in furtherance of collecting upon a debt. Appellants further suggest that their claims under the FDCPA, CSPA, and fraudulent misrepresentation are permitted because immunity does not extend to the "complaining witness."

**{¶85}** As stated, appellants have withdrawn their CSPA claims. Thus, that issue will not be addressed.

**{¶86}** "The doctrine of absolute witness immunity generally bars claims based upon allegedly false testimony." *Etapa v. Asset Acceptance Corp.*, 373 F.Supp.2d 687,

27

690 (E.D. Ky.2004). In this case, HSBC and Wells Fargo are not protected by witness immunity from FDCPA violations for submitting false affidavits in court in furtherance of collecting upon a debt.

{¶87} Appellants correctly point out that "Congress addressed the issue of immunity expressly and extended it only as far as § 1692k(c) [the bona fide error defense] provides. To insist that some unarticulated, common law immunity survived the creation of the FDCPA would be to fail to give effect to the scope of the immunity articulated in the text." *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 232 (4th Cir.2007). *See also Gionis v. Javitch, Block & Rathbone, LLP*, 6th Cir. Nos. 06-3048 & 06-3171, 2007 U.S. App. LEXIS 14054 (June 6, 2007) (finding that litigation immunity, witness immunity, nor qualified immunity under the First Amendment shields defendants from liability under the FDCPA).

{¶88} Testimony presented in the form of an affidavit may be protected under absolute witness immunity, however, this immunity does not extend to the "complaining witness." *See Todd v. Weltman, Weinberg & Reis Co., L.P.A.*, 434 F.3d 432 (6th Cir.2006). It follows that immunity does not attach due to the submission of false affidavits in order to gain a financial benefit. The conduct here was undertaken to further the self-interest of a debt collector by using false affidavits. Thus, witness immunity should not have been applied to shield HSBC and Wells Fargo from the consequences of misconduct in violation of the FDCPA and fraudulent misrepresentation.

{¶89} I believe appellants' second issue is with merit.

**{¶90}** Under their third issue, appellants maintain that the trial court erred in taking judicial notice of prior proceedings in a motion to dismiss and finding that they did not plead justifiable reliance.

**{¶91}** "[A] trial court can take judicial notice of prior proceedings in the same case between the same parties." *In re Veverka*, 11th Dist. Ashtabula No. 98-A-0053, 1999 Ohio App. LEXIS 4654, *20 (Sept. 30, 1999), citing *Diversified Mtge. Investors, Inc. v. Athens Cty. Bd. of Revision*, 7 Ohio App.3d 157 (4th Dist.1982).

**{¶92}** In its November 2, 2011 judgment, the trial court stated:

**{¶93}** "Having taken judicial notice of the Teagardens' position in Case 08 CV 621, the Court does not agree that there was any reliance by the Teagardens upon any representation of HSBC or Wells Fargo in that case. In fact, the Teagardens filed counterclaims in that case and disputed just about everything represented by HSBC. Ultimately, the Teagardens position on standing was proven correct and that case was dismissed."

**{¶94}** This writer's reading of the foregoing judgment reveals that the trial court had already taken judicial notice of appellants' position regarding justifiable reliance in Case No. 08 CV 621. I fail to see any error here.

**{¶95}** I believe appellants' third issue is without merit.

**{¶96}** Under their fourth issue, appellants argue that the statute of limitations does not preclude their FDCPA claim.

**{¶97}** Claims under the FDCPA are subject to a one year statute of limitations. 15 U.S.C. 1692k(d).

{¶98} Appellants' amended counterclaim alleged that Wells Fargo and HSBC violated the FDCPA by filing false affidavits in the prior actions. The amended counterclaim further indicated that appellants were also bringing FDCPA claims for attempts to collect improper and illegal fees and costs. In June 2010, appellants were informed in response to a Qualified Written Request ("QWR") that the fees and costs from the two previous foreclosures were not going to be removed. The attempted collection of these charges occurred in June 2010, *and are continuing.*

{¶99} In their opposition to the motion to dismiss, appellants rebutted the statute of limitations argument by indicating that the fees and costs were still being collected and that the violation *was ongoing.* To the extent that any claims under the FDCPA fall outside the one-year limit, appellants raised claims for recoupment as an affirmative defense. *See Riley v. Montgomery*, 11 Ohio St.3d 75, 77-78 (1984).

{¶100} I believe appellants' fourth issue is with merit.

{¶101} Under their fifth issue, appellants contend that the CSPA applies to Wells Fargo and HSBC.

{¶102} As stated, because appellants have withdrawn their CSPA claims, their fifth issue will not be addressed.

{¶103} Under their sixth issue, appellants allege that the lack of a federal private right of action does not preclude their affirmative claims arising out of the failure to follow the HUD loss mitigation requirements. Appellants admit that there is no private right of action to enforce HUD regulations directly, but assert that they may do so as part of a state law breach of contract claim.

**{¶104}** "The absence of a private right of action from a federal statute provides no reason to dismiss a claim under a state law just because it refers to or incorporates some element of the federal law. * * * To find otherwise would require adopting the novel presumption that where Congress provides no remedy under federal law, state law may not afford one in its stead." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 581 (C.A.7 2012). The lack of a private right of action does not preclude other claims, including breach of contract and breach of fiduciary duty. *See, e.g., Sinclair v. Donovan*, S.D. Ohio Nos. 1:11-CV-00010, 1:11-CV00079, 2011 U.S. Dist. LEXIS 128220 (Nov. 4, 2011).

**{¶105}** Here, the HUD requirements were included in the contract. The failure to follow the guidelines is a condition precedent to being able to foreclose. If employed in good faith, the failure to comply with the loss mitigation requirements could have resolved this matter in September 2005. The record reveals that appellants first encountered problems with their mortgage due to miscommunication related to the Equity Enhancement Program, which provided a half payment every two weeks. Although required, no face-to-face meeting ever occurred. In August 2006, appellants' $900.00 repayment plan payment was rejected under the pretext that it was past due. Another face-to-face meeting was required but never conducted. Under the facts presented, appellants stated a claim for breach of contract and the duty of good faith and fair dealing.

**{¶106}** I believe appellants' sixth issue is with merit.

**{¶107}** To the extent indicated, I believe appellants' first assignment of error is well-taken.

31

{¶108} In their second assignment of error, appellants do not challenge HSBC's standing to enforce the note and foreclose the mortgage. They also do not contest their nonpayment default under the loan. Rather, appellants contend the trial court erred by granting summary judgment in favor of HSBC as to its fulfillment of all conditions precedent and against appellants as to the affirmative defense regarding compliance with the loss mitigation guidelines. They maintain their payments were wrongfully rejected and HSBC did not comply with HUD's face-to-face meeting requirement, a condition precedent to foreclosure.

{¶109} This court stated in *Meloy v. Circle K Store*, 11th Dist. Portage No. 2012-P-0158, 2013-Ohio-2837, ¶5-6:

{¶110} "Summary judgment is a procedural tool that terminates litigation and thus should be entered with circumspection. *Davis v. Loopco Industries, Inc.*, 66 Ohio St.3d 64, 66 * * * (1993). Summary judgment is proper where (1) there is no genuine issue of material fact remaining to be litigated; (2) the movant is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and, viewing the evidence in the non-moving party's favor, that conclusion favors the movant. *See e.g.* Civ.R. 56(C).

{¶111} "When considering a motion for summary judgment, the trial court may not weigh the evidence or select among reasonable inferences. *Dupler v. Mansfield Journal Co.,* 64 Ohio St.2d 116, 121 * * * (1980). Rather, all doubts and questions must be resolved in the non-moving party's favor. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 359 * * * (1992). Hence, a trial court is required to overrule a motion for summary judgment where conflicting evidence exists and alternative reasonable inferences can

32

be drawn. *Pierson v. Norfork Southern Corp.*, 11th Dist. No. 2002-A-0061, 2003-Ohio-6682, ¶36. In short, the central issue on summary judgment is, 'whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-252 * * * (1986). On appeal, we review a trial court's entry of summary judgment de novo. *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105 * * * (1996)." (Parallel citations omitted.)

{¶112} The Ninth District recently stated in *BAC Home Loans Servicing, LP v. Taylor*, 9th Dist. Summit No. 26423, 2013-Ohio-355, ¶13-14:

{¶113} "'[W]here the note or mortgage instrument requires prior notice, the provision of this notice is a condition precedent that must be demonstrated by the moving party under Civ.R. 56.' [*LaSalle Bank, N.A. v. Kelly*, 9th Dist. No. 09CA0067-M, 2010-Ohio-2668,] ¶13-14. * * * [W]hen a loan is subject to HUD regulations, those regulations create conditions precedent to foreclosure. * * *

{¶114} "[I]f the terms of the note and mortgage subject it to HUD regulations regarding default and acceleration, then a homeowner may use a servicer's failure to comply with those regulations to defend a foreclosure action. * * * [A] bank's noncompliance with HUD regulations may bar a foreclosure action if the bank fails to meet its burden under Civil Rule 56 to support its summary judgment motion with acceptable evidence that it satisfied the HUD regulations applicable to default and acceleration." (Citations omitted.)

{¶115} The *Taylor* court also held that "[e]vidence that a post-filing mediation failed is not evidence tending to show compliance with the federal regulation." *Taylor,*

33

*supra,* at ¶21. The Ninth District reversed and remanded the judgment of the trial court after concluding that "the note and mortgage are subject to HUD regulations regarding default and acceleration and the evidence in the record fails to establish, as a matter of law, that [the mortgagee] satisfied 24 C.F.R. 203.604 requiring a face-to-face meeting with the mortgagor before filing a foreclosure action." *Id.* at ¶23.

{¶116} In this case, appellants' payments were wrongfully rejected, the note was accelerated in 2006, and no face-to-face meeting was conducted before initiating foreclosure proceedings. Because HSBC and Wells Fargo failed to have a face-to-face meeting with appellants, throughout the requisite timeframe in these proceedings, they are precluded from foreclosure. HUD regulations state that "[t]he mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid." 24 C.F.R. 203.604(b). A "reasonable effort" "shall consist at a minimum of one letter sent to the mortgagor * * * [and] shall also include at least one trip to see the mortgagor at the mortgaged property * * *." 24 C.F.R. 203.604(d). However, there are exceptions to the requirement. A face-to-face meeting is not required when "[t]he mortgaged property is not within 200 miles of the mortgagee, its servicer, or a branch office of either[.]" 24 C.F.R. 203.604(c)(2).

{¶117} In the case at bar, HSBC argues that because there are no Wells Fargo "servicing" branches within 200 miles of appellants' home, HSBC is exempted from the face-to-face meeting requirement under the guidelines. However, the definition of branch office is unambiguous. *See Wells Fargo Bank, N.A. v. Isaacs*, 1st Dist. Hamilton No. C-100111, 2010-Ohio-5811, ¶9-10. In addition, appellants submitted a printout

stating there were multiple Wells Fargo offices within 200 miles of the property at issue. The note and mortgage are subject to HUD regulations regarding default and acceleration and the evidence in the record fails to establish that Wells Fargo, and thus, HSBC, satisfied the face-to-face meeting requirement.

{¶118} For the reasons stated, I agree with the majority that appellants' second assignment of error is with merit.

{¶119} In their third assignment of error, appellants allege that the trial court erred by granting summary judgment on the RESPA claim.

{¶120} "Congress enacted RESPA in 1974 to protect home buyers from inflated prices in the home purchasing process." *Schuetz v. Banc One Mtge. Corp.*, 292 F.3d 1004, 1008 (9th Cir.2002). The statute provides:

{¶121} "The Congress finds that significant reforms in the real estate settlement process are needed to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." 12 U.S.C. 2601(a).

{¶122} RESPA sets forth certain duties of a loan servicer following borrower inquiries. Upon receipt of a proper QWR, a servicer must either "make appropriate corrections in the account of the borrower," or conduct an investigation and provide the borrower a written explanation or clarification that includes "a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer. * * * " 12 U.S.C. 2605(e)(2)(A) and (B)(i).

35

**{¶123}** Based on the foregoing, servicers may disagree with a borrower's interpretation of the account, and must explain the reason for the disagreement. "Under RESPA, it is irrelevant whether the servicer's understanding of the loan modification agreement is correct, so long as it is reasonable." *Vassalotti v. Wells Fargo Bank, N.A.,* 732 F.Supp.2d 503, 509 (E.D. Pa.2010); 12 U.S.C. 2605(e)(2)(B).

**{¶124}** An allegation that a servicer failed to adequately respond to a party's QWR is sufficient to state a claim. *See Anderson v. Barclays Capital Real Estate, Inc.,* N.D. Ohio No. 3:09CV2335, 2010 U.S. Dist. LEXIS 68327, *15 (June 18, 2010).

**{¶125}** In this matter, appellants' QWR demanded that Wells Fargo remove charges from their account related to the prior two dismissed foreclosures. The charging of fees and costs that were associated with a lawsuit where there was no legal capacity to sue is not permitted. *See Foster v. D.B.S. Collection Agency*, 463 F.Supp.2d 783, 805 (S.D. Ohio 2006). Wells Fargo indicated it was not removing any related charges. As a result of Wells Fargo's response, no possible investigation could have been conducted.

**{¶126}** The question of whether Wells Fargo's belief was reasonable should have been reserved for the jury. At a minimum, it is at least a question of fact as to whether the belief was reasonable. Thus, the trial court should not have entered summary judgment on appellants' RESPA claim.

**{¶127}** I believe appellants' third assignment of error is with merit.

**{¶128}** For the foregoing reasons, I believe appellants' three assignments of error are well-taken. This writer would reverse the judgment of the Trumbull County Court of Common Pleas and remand the matter for further proceedings.

**{¶129}** Thus, I concur in part and dissent in part.