[Cite as *RBS Citizens, NA v. Sharp*, 2015-Ohio-5438.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| RBS CITIZENS, NA | ) | CASE NO. 13 MA 11 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| MARY KAY SHARP, et al. | ) | |
| | ) | |
| DEFENDANTS-APPELLANTS | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from the Court of Common
                              Pleas of Mahoning County, Ohio
                              Case No. 11 CV 2646

JUDGMENT:                     Affirmed in part.  Reversed in part.
                              Remanded.

APPEARANCES:

For Plaintiff-Appellee:       Atty. Phillip Barragate
                              Atty. Ashlyn Heider
                              Shapiro, Van Ess, Phillips
                                & Barragate LLP
                              4805 Montgomery Rd., Suite 320
                              Norwood, Ohio 45212

For Defendants-Appellants:    Atty. Bruce M. Broyles
                              5815 Market Street, Suite 2
                              Boardman, Ohio 44512

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Mary DeGenaro

                              Dated:  December 16, 2015

WAITE, J.

{¶1}   In this foreclosure action, Appellants Mary Kay and James E. Sharp appeal a January 9, 2013 Mahoning County Common Pleas Court judgment in favor of Appellee RBS Citizens, NA.   Appellants argue in their first two assignments of error that Appellee failed to comply with the requirements of C.R.F. §203.604(d) by failing to provide proper notice of their right to participate in a face-to-face meeting. Appellants also claim that the trial court erred in finding that Appellee complied with the loss-mitigation provisions of the mortgage.

{¶2}   For the reasons provided, Appellants' first two assignments of error have merit and the matter is remanded on this basis.   However, Appellant's third assignment of error is without merit and the judgment of the trial court is affirmed as to that issue.

Factual and Procedural History

{¶3}   On January 13, 2010, Appellants executed a note and mortgage with Appellee in the amount of $90,333.   The loan was secured by a General National Mortgage Loan ("Ginnie Mae") and was subject to the regulations of the U.S. Department of Housing and Urban Development ("HUD").   In March of 2010, Appellant James Sharp was laid off from his job and developed certain medical conditions that required surgery.   On April 1, 2010, Appellants defaulted on the loan. Both parties discussed loss mitigation options for approximately fifteen months after default before Appellee filed its foreclosure complaint on August 9, 2011.

{¶4}   Appellee filed a motion for summary judgment, which was granted in part based on the magistrate's determination that Appellee did not have a servicing

office within 200 miles of the mortgaged property and so was excused from a HUD regulation that requires a face-to-face meeting between the parties prior to the commencement of foreclosure proceedings.

**{¶5}** After the issue of the face-to-face meeting was disposed of in summary judgment, the magistrate held a bench trial on the remaining two issues: whether Appellee properly informed Appellants of their right to a face-to-face meeting and whether Appellee properly complied with the loss-mitigation requirements. On August 2, 2012, the magistrate found in Appellee's favor on both issues. An objection to the magistrate's decision was filed, but the trial court adopted the decision and ruled in Appellee's favor. This timely appeal followed.

<u>Final Appealable Order</u>

**{¶6}** As a preliminary matter, Appellee argues that Appellants failed to object to the magistrate's decision to grant partial summary judgment, thus any issue stemming from that decision is not properly on appeal. In response, Appellants contend that the partial summary judgment decision was not a final appealable order and they were not required to object until the entire matter was resolved. By definition, a final appealable order disposes of the whole case or some separate and distinct branch thereof. *Noble v. Colwell,* 44 Ohio St.3d 92, 94, 540 N.E.2d 1381 (1989). An order granting partial summary judgment is not separate and distinct when the issue determined is based on the same facts and circumstances as the claims that remain pending before the court. *Id.* We have previously held that when all of the issues before the court were based on the sale of the same property and

only one of those issues was disposed of in partial summary judgment, the order granting partial summary judgment is not immediately final and appealable. *Salata v. Vallas,* 7th Dist. No. 03-MA-157, 159 Ohio App.3d 108, 2004-Ohio-6037, 823 N.E.2d 50, ¶19.

**{¶7}** Here, the magistrate granted partial summary judgment on whether Appellee was excused from arranging a face-to-face meeting with Appellants. However, the magistrate did not grant summary judgment as to either the sufficiency of the notice or the loss mitigation claim. Pursuant to *Salata,* as all issues stem from the question of whether Appellee satisfied the HUD requirements in the same foreclosure proceeding, the issues are not separate and distinct. We also note that although the partial summary judgment decision stated that it was a final order, it did not include the requisite Civ.R. 54(B) language. Based on the record here, the partial summary judgment was not immediately a final appealable order and Appellants have not waived their arguments in regard to the issue.

**{¶8}** Appellee also argues that Appellants failed to file an objection to the magistrate's decision regarding summary judgment at the time it was entered. Appellants did file an objection to the magistrate's decision following the bench trial on the other two issues, and their objection included reference to the summary judgment determination. As the partial grant of summary judgment did not become a final appealable order until after the remaining issues were tried, Appellants' objection to the magistrate's decision was timely.

## ASSIGNMENT OF ERROR NO. 1

THE TRIAL COURT ABUSED ITS DISCRETION BY ADOPTING THE MAGISTRATE'S DECISION DETERMINING THAT "THE LAW OF THE CASE" WAS ESTABLISHED BY THE JULY 19, 2012 JUDGMENT ENTRY, WHICH ADOPTED THE MAGISTRATE'S FINDING THAT APPELLANT [SIC] WAS EXCUSED FROM THE RESPONSIBILITY TO HOLD A FACE-TO-FACE MEETING WITH APPELLEE [SIC].

**{¶9}** An appellate court reviews a trial court's decision to adopt, reject, or modify a magistrate's decision for an abuse of discretion. *Bank of America, N.A. v. Miller,* 7th Dist. No. 13 MA 119, 2015-Ohio-2325, ¶25, citing *Long v. Noah's Lost Ark, Inc.*, 158 Ohio App.3d 206, 2004-Ohio-4155, 814 N.E.2d 555, ¶17 (7th Dist.). However, a trial court's decision to adopt a magistrate's decision that grants summary judgment is reviewed *de novo. Id.*

**{¶10}** Before ruling on a motion for summary judgment, the trial court must look at all facts in the light most favorable to the non-moving party and find that: "(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party." *Campbell Oil Co. v. Shepperson,* 7th Dist. No. 05-CA-817, 2006-Ohio-1763, ¶8, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

**{¶11}** In moving for summary judgment, "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis deleted) *Campbell Oil Co.* at ¶9, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996). In response, the non-moving party must set forth specific facts showing that a genuine issue of fact remains for trial and that a reasonable factfinder could rule in that party's favor. *Id.*, citing *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 386, 701 N.E.2d 1023 (1997).

**{¶12}** C.F.R. 24 §203.604(b) provides in relevant part that:

The mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid. If default occurs in a repayment plan arranged other than during a personal interview, the mortgagee must have a face-to-face meeting with the mortgagor, or make a reasonable attempt to arrange such a meeting within 30 days after such default and at least 30 days before foreclosure is commenced.

**{¶13}** However, pursuant to C.F.R. 24 §203.604(c):

A face-to-face meeting is not required if:

(1) The mortgagor does not reside in the mortgaged property,

(2)  The mortgaged property is not within 200 miles of the mortgagee, its servicer, or a branch office of either,

(3)  The mortgagor has clearly indicated that he will not cooperate in the interview,

(4)  A repayment plan consistent with the mortgagor's circumstances is entered into to bring the mortgagor's account current thus making a meeting unnecessary, and payments thereunder are current, or

(5)  A reasonable effort to arrange a meeting is unsuccessful.

The bank bears the burden of proving an exception to the HUD regulations exists. *Wells Fargo Bank, N.A. v. Aey,* 7th Dist. No. 12-MA-173, 2013-Ohio-5381, ¶45, citing *Bank of America, N.A. v. Gray*, 5th Dist. No. 2012-CA-116, 2010-Ohio-712, ¶21.

**{¶14}** Appellants argue that HUD requires a mortgagee to hold a face-to-face meeting with the mortgagor before initiating foreclosure proceedings.  Appellants note that Appellee does not dispute that it failed to arrange and hold a face-to-face meeting before these foreclosure proceedings began.  As HUD requires a meeting and Appellee has not met any of the exemptions, Appellants argue that the magistrate erred in finding that Appellee was excused from arranging and holding such meeting.

**{¶15}** In response, Appellee cites to a Texas U.S. District Court case which held that the term "branch office" within C.R.F. §203.604(c)(2) refers to a servicing office.  *Mitchell v. Chase Home Finance*, LLC, N.D.Texas No. CV-2099-K, 2008 WL

623395 (Mar. 4, 2008). In addition to the Texas case, Appellee cites to a "Q&A section" of the HUD website. According to Appellant, this section also suggests that HUD's reference to a "branch office" means a servicing office. Appellee contends that it produced evidence showing that it did not have a servicing office within 200 miles of the mortgaged home, and so was exempt from participating in a face-to-face meeting with Appellants.

**{¶16}** Although Appellee relies on Texas law and the HUD website, several Ohio appellate districts have already interpreted the term "branch office" as it pertains to C.R.F. 206.604(c)(2). The First District held that the term "branch office," which is specifically listed within the regulation, is not limited to only a servicing branch. *Wells Fargo, NA v. Isaacs,* 1st Dist. No. C-100111, 2010-Ohio-5811, ¶10. The court further stated that the term is unambiguous, so there is no need to look to the agency for interpretation. *Id.* Similarly, the Fourth District held that a plain reading of the regulation suggests that the 200-mile exception applies only when there is no branch of the bank of any kind within 200 miles. *Wells Fargo v. Phillabaum,* 4th Dist. No. 10CA10, 192 Ohio App.3d 712, 2011-Ohio-1311, 950 N.E.2d 245, ¶14. Likewise, the Eleventh District held that the term "branch office" does not refer specifically to a servicing office; rather it refers to any branch office. *HSBC Bank USA, Nat'l. Trust Co. v. Teagarden,* 11th Dist. No. 2012-T-0091, 2013-Ohio-5816, ¶61.

**{¶17}** Although Appellee contends that "branch office" really means a servicing office, it is the established law in Ohio that the term refers to any branch office. We likewise determine that the 200-mile exception within HUD regulations

that would excuse a face-to-face meeting refers to any branch office, not solely a servicing branch office. Appellee has produced no evidence that it has no branch office within 200 miles of the mortgaged house. Hence, this record reflects that it has not met its burden of proving that it was exempt from holding a face-to-face meeting with Appellants pursuant to C.R.F. §203.604(c)(2). We find that summary judgment was improperly granted on this issue. Appellants' first assignment of error has merit and is sustained.

ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT ABUSED ITS DISCRETION BY ADOPTING THE MAGISTRATE'S DECISION WHICH WAS CONTRARY TO LAW AND WHICH FOUND THAT APPELLEE MADE THE REQUIRED ATTEMPT TO ARRANGE A FACE-TO-FACE MEETING THROUGH CORRESPONDENCE MAILED TO APPELLANT'S RESIDENCE BY REGULAR MAIL AND ADMITTED INTO EVIDENCE AS PLAINTIFF'S EX. "5".

**{¶18}** An appellate court reviews a trial court's adoption, modification, or rejection of a magistrate's decision for an abuse of discretion. *Bailey v. Marrero-Bailey,* 7th Dist. No. 10 BE 16, 2012-Ohio-894, ¶16, citing *Spain v. Hubbard*, 7th Dist. No. 02 BA 15, 2003-Ohio-2555, ¶27. "The term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Bailey* at ¶16, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶19}** As stated earlier, there are two possible exemptions to the face-to-face meeting requirement in this case. We have already determined that Appellee offered no proof that it met the criteria for the 200-mile exemption. However, the trial court additionally ruled that Appellee qualified under another exemption, as it made reasonable efforts to arrange such a meeting.

**{¶20}** According to C.F.R. §203.604(d): "[a] reasonable effort to arrange a face-to-face meeting with the mortgagor shall consist at a minimum of one letter sent to the mortgagor certified by the Postal Service as having been dispatched." The Second, Fifth, and Eleventh Districts have each held that the "minimum" effort necessary to comply with C.F.R. §203.604(d) requires that the letter be sent to the mortgagor by certified mail. See *U.S. v. Detweiler,* 5th Dist. No. CA2010-00064, 191 Ohio App.3d 464, 2010-Ohio-6408, 946 N.E.2d 777; *Washington Mut. Bank v. Mahaffey,* 2d Dist. No. 19651, 154 Ohio App.3d 44, 2003-Ohio-4422; *HSBC Bank USA, Nat'l Trust Co. v. Teagarden,* 11th Dist. No. 2012-T-0091, 2013-Ohio-5816, 6 N.E.3d 678.

**{¶21}** Citing to *Detweiler*, Appellants contend that an attempt to arrange a face-to-face meeting through regular mail is insufficient to meet HUD requirements. The plain language of the regulation requires that such attempt must be made via certified mail. As Appellee's letter was sent by regular mail, Appellants contend that the minimum effort was not met and the trial court erred in adopting the magistrate's finding that Appellee made the requisite attempt to arrange a face-to-face meeting.

**{¶22}** Appellee responds by arguing that Appellants failed to provide us with the transcripts of the trial court proceedings, thus we are limited to reviewing only questions of law. Appellee argues that a determination whether the letter was sent through the proper channel would require us to make a finding of fact. In this argument, Appellee overlooks the fact that the magistrate's decision clearly states that Appellee "did attempt to arrange a face-to-face meeting with Defendant, Mary Kay Sharp through correspondence *mailed to her residence by regular mail* and admitted into evidence as Plaintiff's Ex '5'." (Emphasis added) (Mag. Dec., pp. 3-4.) It is apparent that the magistrate and the trial court did make the finding of fact as to the manner in which the letter was mailed. Appellants seek for us to review the legal impact of this finding: whether that method is acceptable under the law. Contrary to Appellee's assertion, failure to provide a transcript of the hearing is not fatal to this issue on review.

**{¶23}** Ohio law is clear: notice of the right to a face-to-face meeting must be sent through certified mail. The law is equally clear that regular mail is insufficient. As the trial court made a factual finding that the letter was sent to Appellants via regular mail, the record clearly discloses that Appellee failed to comply with C.R.F. §203.604(d). Accordingly, Appellants' second assignment of error has merit and is sustained.

<u>ASSIGNMENT OF ERROR NO. 3</u>

THE TRIAL COURT ABUSED ITS DISCRETION BY ADOPTING THE

MAGISTRATE'S DECISION WHICH MAKES A FINDING OF FACT

THAT THE "PROCESS NOTES" STATE "... THE INVESTOR IS GINNIE MAE AND WE ARE NOT MODIFYING GINNIE MAE LOANS BECAUSE WE WOULD HAVE TO PURCHASE THEM OUT OF THE INVESTOR POOL.", AND THEN CONCLUDES THAT APPELLEE SUBSTANTIALLY COMPLIED WITH ALL THE REQUIREMENTS OF THE HUD LOSS MITIGATION PROGRAM.

**{¶24}** C.R.F. §203.501 provides:

Mortgagees must consider the comparative effects of their elective servicing actions, and must take those appropriate actions which can reasonably be expected to generate the smallest financial loss to the Department. Such actions include, but are not limited to, deeds in lieu of foreclosure under § 203.357, pre-foreclosure sales under § 203.370, partial claims under § 203.414, assumptions under § 203.512, special forbearance under §§ 203.471 and 203.614, and recasting of mortgages under § 203.616. HUD may prescribe conditions and requirements for the appropriate use of these loss mitigation actions, concerning such matters as owner-occupancy, extent of previous defaults, prior use of loss mitigation, and evaluation of the mortgagor's income, credit and property.

**{¶25}** This language is further explained in C.R.F. §203.605 Loss mitigation performance:

**(a) Duty to mitigate**. Before four fully monthly installments due on the mortgage have become unpaid, the mortgagee shall evaluate on a monthly basis all of the loss mitigation techniques provided at § 203.501 to determine which is appropriate. Based upon such evaluations, the mortgagee shall take the appropriate loss mitigation action. * * *

**{¶26}** Appellants contend that Appellee refused to consider loan modification, which is one of the three HUD loss-mitigation programs that a mortgagee is required to consider. Appellants also argue that the magistrate erred in determining that Appellee had discretion to determine which of the three loss-mitigation programs would be offered. As loss-mitigation programs are not optional, Appellants assert that the trial court erred in adopting the magistrate's determination that Appellee substantially complied with HUD regulations.

**{¶27}** In response, Appellee argues that Appellants failed to provide the trial court with the transcripts of the proceedings before the magistrate. For this reason, both the trial court and this Court are limited to reviewing only questions of law. As to the law, Appellee contends that the evidence of record shows that it substantially complied with loss-mitigation. Appellee urges that it has the discretion to determine which of the loss-mitigation programs is best suited for a defaulted loan. The fact that the chosen method did not satisfy Appellants does not rise to the level of non-compliance.

**{¶28}** Here, while we are somewhat hampered by the lack of a transcript of the hearing before the magistrate, which was not filed to the trial court and cannot be considered on appeal, the record does establish that Appellee considered loan modification. The record also demonstrates that loan modification was not a viable option, as it would require Appellee to purchase the loan out of the investor pool. By its plain language, C.R.F. §203.501 allows a mortgagee to compare the potential effects of each option and choose a program "which can reasonably be expected to generate the smallest financial loss to the Department." It appears that this is exactly what happened in the instant case. Appellee weighed the effects of loan modification, determined that it would result in a significant loss, and offered Appellants a repayment plan. Although the repayment plan offered by Appellee was apparently not a viable option for Appellants, this record demonstrates that Appellee complied with HUD's loss-mitigation requirement. Appellants' third assignment of error is without merit and is overruled.

## Conclusion

**{¶29}** As Appellee failed to present any evidence to show that it does not have any branch office as defined by Ohio law within 200 miles of the mortgaged home, the trial court erred in adopting the magistrate's determination that Appellee met the 200-mile exemption specified in C.R.F. §203.604(5)(d). Consequently, the trial court erroneously adopted the magistrate's decision granting partial summary judgment in favor of Appellee on this issue. Similarly, the trial court erred by adopting the magistrate's finding that Appellee complied with C.R.F. §203.604(d), as the

requisite notice to Appellants was not sent by certified mail. The trial court was correct, however, in adopting the magistrate's finding that Appellee substantially complied with the loss-mitigation requirement. Accordingly, we reverse and remand the issue regarding the requirement of a face-to-face meeting for further proceedings consistent with this Opinion. The trial court's adoption of the magistrate's decision as to the loss-mitigation issue is affirmed.

Donofrio, P.J., concurs.

DeGenaro, J., concurs in judgment only in part with concurring in judgment only in part opinion.

DeGENARO, .J.

{¶30} Although I agree with the majority's merit analysis and its determination that the trial court's July 19, 2012 judgment entry granting Appellee partial summary judgment expressly finding "there being no just cause for delay," was not a final appealable order until after the trial on the remaining issues, I write separately because I cannot join the analysis regarding that issue. The partial summary judgment entry was not an immediately final appealable order because it failed to meet the criteria of R.C. 2505.02. As such, it is unnecessary to reach the issue of whether the entry complied with Civ.R. 54(B)—the second step in appealability analysis.

{¶31} Appellate courts evaluate their jurisdiction over a purported final judgment that disposes of some, but not all, claims in an action, by applying a two-step analysis. The first question to be answered is whether the judgment is a final appealable order as defined by R.C. 2505.02. If the answer is yes, only then does the appellate court continue the analysis. The second question to be answered is whether the trial court invoked the Civ.R. 54(B) language and if so, whether that determination was correct. The majority held—despite the Civ.R. 54(B) language employed by the trial court—that the order was not immediately appealable as contemplated by Civ.R. 54, thus limiting its analysis to the second question. Implicit in this holding is the majority's conclusion that the judgment was a final appealable order pursuant to R.C. 2505.02. The majority supports its conclusion with the analysis from this panel's majority decision in *Salata v. Vallas*, 7th Dist. No. 03 MA 157, 2004-Ohio-6037.

{¶32} The present case is the third in a series considered by this panel regarding the interplay of the statute and civil rule regarding the finality and appealability of partial summary judgments disposing of some but not all claims in a suit, the prior two being *Felger v. Tubetech*, 7th Dist. No. 00 CO 23, 2002-Ohio-1161 (DeGenaro and Donofrio, majority; Waite, dissenting); and *Salata v. Vallas*, 7th Dist. No. 03 MA 157, 2004-Ohio-6037 (Waite and Donofrio, majority; DeGenaro,

dissenting). Stated differently, this line of cases raises the two-part question of first, *whether,* and then *when*, an appellate court has jurisdiction to review a partial judgment.

**{¶33}** In *Felger,* an employee asserted seven claims against her employer: sex and handicap discrimination as well as separate retaliation claims, retaliation for filing a worker's compensation claim, emotional distress arising out of the five discrimination/retaliation claims and loss of consortium. *Felger* at *1. The trial court, finding no just reason for delay, granted the employer partial summary judgment on only two claims: sex discrimination retaliation and disability discrimination. *Id.* at *2. Although this left the underlying sex discrimination, disability and workers' compensation retaliation, emotional distress, and loss of consortium claims to be resolved, the majority held that there was jurisdiction to consider the appeal. *Id.* at *5. The dissent argued the judgment there was not immediately appealable because there was a "body of interest" shared by the resolved claims and those claims still before the trial court for resolution, relying on *Chef Italiano Corp. v. Kent State Univ.*, 44 Ohio St.3d 86, 541 N.E.2d 64 (1989), to support this conclusion, although conceding such phraseology was not used in *Chef Italiano*, but was implied. *Felger* at *10 (Waite, J., dissenting.)

**{¶34}** *Salata* involved a home sale resulting in the vendor filing a complaint alleging breach of contract and conversion of personal property, and the purchaser filing a counterclaim asserting fraud and RICO claims related to the sale and the wrongful removal of fixtures. *Salata* at ¶2. The vendor filed for summary judgment on most of the claims raised in the complaint and the counterclaim; however the trial court only granted summary judgment in favor of the vendor on the purchaser's RICO claim, finding no just reason for delay. *Id.* at ¶5. The majority held there was no jurisdiction to consider the appeal, reasoning:

> Without explicitly saying so, the Ohio Supreme Court also ruled that for
> any adjudicated claim that had a common body of interest still pending
> before the trial court, the partially resolved issues were not final and

appealable despite the inclusion in the judgment entry of the "no just cause for delay" language from in Civ.R. 54(B). This implicit holding in *Chef Italiano* applies to the situation presented to us in the instant appeal.

*Id.* at ¶ 23.

**{¶35}** The dissent in *Salata* concluded the judgment was a final appealable order, and in so doing contrasted the final appealability holdings in that case and in *Felger*, first discussing the different interpretation of the second prong of the test— Civ.R. 54(B)—noting that the rule was amended after *Chef Italiano* to include the language "whether arising out of the same or separate transaction." *Salata* at ¶29 (DeGenaro, J., dissenting.) The dissent continued:

In 1993, the Ohio Supreme Court set forth the appropriate analysis for reviewing the finality and appealability of orders containing Civ.R. 54(B) certification. See *Wisintainer v. Elcen Power Strut Co.* (1993), 67 Ohio St.3d 352, 354, 617 N.E.2d 1136. An appellate court first reviews whether the order is final pursuant to R.C. 2505.02, focusing on "that predominantly legal question of whether the order sought to be appealed affects a substantial right and whether it in effect determines an action and prevents a judgment." *Id.* Second, the court reviews whether the trial court's determination that "there is no just cause for delay" was appropriate. *Id.*

"A final order * * * is one disposing of the whole case or some separate and distinct branch thereof." *Noble v. Colwell* (1989), 44 Ohio St.3d 92, 94, 540 N.E.2d 1381. To be final and appealable in a case involving multiple claims and multiple parties, an order must "dispose of at least one full claim by one party against another and contain an express certification pursuant to Civ.R. 54(B)." *Horner v. Toledo Hosp.* (1993), 94 Ohio App.3d 282, 288, 640 N.E.2d 857. It is clear in this case that the trial court's order dismisses Vallas's entire counterclaim

against Salata, thus preventing Vallas from obtaining a judgment against Salata. Accordingly, the order from which Vallas appealed is in fact final.

Pursuant to *Wisintainer,* it must next be determined whether the trial court properly certified that "there is no just reason for delay." This phrase "is not a mystical incantation which transforms a nonfinal order into a final appealable order. Such language can, however, through Civ.R. 54(B), transform a final order into a final appealable order." (Citation omitted.) *Wisintainer,* 67 Ohio St.3d at 354, 617 N.E.2d 1136.

*Salata* at ¶ 26-36 (DeGenaro, J., dissenting).

**{¶36}** Turning to the first step in appealability analysis here—whether the order is final pursuant to R.C. 2505.02—the section of the statute applicable to this case provides: "An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following: (1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment[.]" R.C. 2505.02(B)(1).

**{¶37}** The face-to-face meeting requirement is a right afforded Appellant by federal law, and is a substantial right which she is entitled to enforce. R.C. 2505.02(A)(1). The trial court concluded that Appellee was excused from conducting a face-to-face meeting with Appellant because there was not a service branch within 200 miles of her home. However, this decision did not determine the action or prevent a judgment, because it did not "dispose of the whole merits of the cause or some separate and distinct branch thereof and leave nothing for the determination of the trial court." *Hamilton Cty. Bd. of Mental Retardation & Dev. Disabilities v. Professionals Guild of Ohio,* 46 Ohio St.3d 147, 153, 545 N.E.2d 1260 (1989). Instead, the order resolved a statutory defense to foreclosure.

**{¶38}** "[T]wo judgments are appealable in foreclosure actions: the order of foreclosure and sale and the order of confirmation of sale. *LaSalle Bank Natl. Assn.,* 2012-Ohio-4040, 2012 WL 3834894, ¶ 20." *CitiMortgage, Inc. v. Roznowski,* 139

Ohio St.3d 299, 2014-Ohio-1984, 11 N.E.3d 1140, ¶ 35 reconsideration denied, 139 Ohio St.3d 1473, 2014-Ohio-3012, 11 N.E.3d 1195, ¶ 35 (2014). Among other things, the trial court's July 19, 2012 judgment entry does not indicate the amount due on the promissory note or prioritize the liens on the property, just to name two elements of a foreclosure decree and order of sale.  *CitiMortgage, LaSalle.*

{¶39}    A central issue for appellate courts and practitioners is when the court has jurisdiction to consider a partial final judgment in a case.  Because this is an issue courts and practitioners at both the appellate and trial court levels face with regularity, the correct analytical order and substance regarding the interplay between R.C. 2505.20 and Civ.R. 54(B) is critical. Thus, I reprise my dissent in *Salata*: *Felger* correctly states the law with respect to when a partial judgment is ripe for appeal. Here, the majority relies upon *Salata* in its application of Civ.R. 54(B), and as that analysis is incorrect, I cannot join that reasoning.

{¶40}    Applying *Felger* and *Wisintainer* here, resolution of when this court had jurisdiction to consider the partial summary judgment regarding the face-to-face requirement starts and ends with the first step of the analysis—whether the order is a final order as contemplated by the statute.  It is not.  *See CitiMortgage; LaSalle.* Thus, I respectfully disagree with that portion of the majority's analysis.