[Cite as *Calhoun v. Calhoun*, 2021-Ohio-4551.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## JEFFERSON COUNTY

KEVIN R. CALHOUN,

Plaintiff-Appellee,

v.

KASIE B. CALHOUN,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 20 JE 0014**

---

Civil Appeal from the
Court of Common Pleas of Jefferson County, Ohio
Case No. 18DR151

**BEFORE:**
Gene Donofrio, Cheryl L. Waite, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed

---

*Atty. Jane Hanlin*, 100 N. Fourth Street, 10th Floor, Steubenville, Ohio 43952, for Plaintiff-Appellee and

*Atty. Elgine H. McArdle*, 2139 Market Street, Wheeling, West Virginia 26003, for Defendant-Appellant.

Dated
December 13, 2021

**Donofrio, J.**

{¶1} Defendant-appellant, Kasie Calhoun, appeals from a Jefferson County Common Pleas Court judgment granting plaintiff-appellee's, Kevin Calhoun's, motion to reallocate parental rights and responsibilities and designating him as the residential parent of the parties' three children.

{¶2} The parties were married on May 24, 2013. They share three children: L.C. (d.o.b. 5/31/12), B.C. (d.o.b. 12/16/14), and C.C. (d.o.b. 12/22/17). On May 15, 2018, the parties filed a petition for dissolution that included a separation agreement and parenting plan. On June 25, 2018, the trial court granted the parties a dissolution and approved their separation agreement and parenting plan. Pursuant to the parenting plan, appellant was designated the residential parent. Appellee was granted overnight parenting time three out of four weekends per month.

{¶3} On April 22, 2019, appellee filed a motion for ex parte emergency custody and a motion to reallocate parental rights and responsibilities. Appellee attached his affidavit in support. He averred that he had just learned from appellant's mother that appellant's boyfriend had overdosed while at appellant's apartment with the children home. Appellant's mother had then taken the children to her home to get them away from that environment. Appellee further averred that he believed appellant was using drugs in the children's presence. The court granted appellee's emergency motion, granted him temporary custody of the children, and set the matter for a hearing.

{¶4} At the May 2, 2019 hearing, the parties agreed that appellee would continue as the temporary residential parent and appellant would have visitation with the children that would be supervised by her mother. Additionally, appellant was to submit to a drug and alcohol assessment with the results to be shared with the court.

{¶5} On July 18, 2019, appellant filed a motion to terminate the temporary order and to reinstate the parties' original parenting agreement. She asserted that her drug assessment revealed that she did not meet the criteria for substance abuse. She further asserted that she no longer associated with the boyfriend who had overdosed.

{¶6}     The matter proceeded to a hearing before a magistrate on September 6, 9, and 13, 2019.  The magistrate heard testimony from both parties, their significant others, several family members, and the counselor who administered appellant's drug assessment.  After hearing all of the evidence, the magistrate sustained appellee's motion and designated him the children's residential parent.  He concluded that there had been a change in circumstances since the dissolution and that the harm caused to the children by a change of environment was outweighed by the advantages of the change of environment.  The magistrate also analyzed the evidence to demonstrate that a change in custody was in the children's best interests.  The magistrate stated that appellant was to have parenting time pursuant to the court's long distance guidelines whereby she would have the children three out of four weekends per month.  The magistrate also imputed minimum wage to appellant for child support purposes.

{¶7}     Appellant filed objections to the magistrate's decision.  She complained there was no evidence of harm to the children, no evidence that she used drugs in the children's presence, an expert testified that she did not suffer from a drug addiction, the magistrate abused his discretion in granting appellee's motion, and the magistrate's decision violated her First Amendment Right to freedom of expression.

{¶8}     The trial court overruled appellant's objections on August 13, 2020.  The court stated that it found the magistrate's decision well founded.  It then ordered that the magistrate's decision was "approved, incorporated, and attached hereto."  Appellant filed a notice of appeal with this court.

{¶9}     On October 6, 2020, this court put on a judgment entry addressing the trial court's August 13, 2020 journal entry.  We stated the trial court's journal entry was not a final, appealable order because it simply adopted the magistrate's decision without stating the rights, duties, and obligations of the parties.  Therefore, we decided to hold the appeal in abeyance and issued a limited remand to the trial court to enter a final, appealable order.  On February 16, 2021, after still not receiving a final judgment from the trial court, this court put on another judgment entry instructing the trial court to issue a final, appealable order.

{¶10}     In response to this court's instructions, on March 12, 2021, the trial court entered a judgment granting appellee's motion to reallocate parental rights and

responsibilities and overruling appellant's objections to the magistrate's decision. The court found that there had been a change in circumstances since the dissolution, that any harm caused to the children by a change of environment was outweighed by the advantages of the change of environment, and that a change in custody was in the children's best interest. The trial court designated appellee as the residential parent. It granted appellant visitation three weekends per month from Friday at 5:00 p.m. until Sunday at 5:00 p.m. with holiday and summer vacations governed by the standard guidelines. The court also imputed minimum wage to appellant and ordered her to pay monthly child support in the amount of $185.60.

{¶11}   We then returned this appeal to our active docket. Appellant now raises six assignments of error.

{¶12}   Appellant's first assignment of error states:

THE COURT OF COMMON PLEAS FAILED TO MAKE INDEPENDENT FINDINGS OF FACT AND CONCLUSIONS OF LAW ON THE OBJECTIONS FILED BY APPELLANT.

{¶13}   Appellant argues the trial court was required to make findings of fact independent from those of the magistrate. She asserts the trial court simply "rubber-stamped" the magistrate's decision and failed to make its own determination as to her objections. She claims this was in violation of Civ.R. 53(D)(4)(d).

{¶14} Pursuant to Civ.R. 53(D)(4)(d) in ruling on objections to a magistrate's decision, the trial court "shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Thus, the trial court is to apply a de novo review of a magistrate's decision, not an abuse of discretion standard of review. *Francis v. McDermott*, 2d Dist. Darke No. 1744, 2008-Ohio-6723.

{¶15} On review of the trial court's decision to adopt, reject, or modify a magistrate's decision, an appellate court applies an abuse of discretion standard. *RBS Citizens, NA v. Sharp*, 7th Dist. Mahoning No. 13 MA 11, 2015-Ohio-5438, 47 N.E.3d 170, ¶ 9.

{¶16}   Pursuant to Civ.R. 53(D)(4)(d):

If one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections. In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law.

{¶17}   Here, the trial court issued a judgment on August 13, 2020, overruling appellant's objections and approving the magistrate's decision.  This court determined that the trial court's August 13 judgment was not a final, appealable order because it did not state the rights, duties, and obligations of the parties.  Consequently on March 12, 2021, the trial court issued another judgment entry.

{¶18}   The trial court's March 12 judgment entry provides in relevant part:

The Court has considered the record, the transcript from the Magistrate's hearing conducted on September 6, 9, and 13th, 2019, and all evidence admitted.

Based thereon, the Court finds that the Magistrate's Decision is well founded upon sufficient facts and consistent with the law and therefore adopts the same consistent with best interest of the Parties' minor children.

WHEREFORE, consistent with the Magistrate's findings, the Court finds the following:

The court then restates the magistrate's findings.  It follows the findings by stating that appellee's motion to reallocate parental rights and responsibilities is granted and appellant's objections to the magistrate's decision are overruled.

{¶19}   In examining whether a trial court has complied with Civ.R. 53(D)(4)(d) in ruling on objections to a magistrate's decision;

a reviewing court will presume that the trial court conducted an independent review of the magistrate's decision unless the Appellant affirmatively shows that the trial court failed to conduct an independent analysis. *Rokakis v. W. Res. Leasing Co.*, 8th Dist. No. 95058, 2011-Ohio-1926, ¶ 18, citing *McCarty v. Hayner*, 4th Dist. No. 08CA8, 2009-Ohio-4540, ¶ 18.  Overruling

objections to the magistrate's decision and adopting that decision without any explanation does not show a lack of independent review of the matters. *Millers v. Kasnett*, 8th Dist. No. 100448, 2015-Ohio-298, ¶ 21. "[T]he trial court is not required to 'comment or reference' any portion of the record in undertaking its independent review of the record." *Id.*, citing *Ernsberger v. Ernsberger*, 8th Dist. No. 100675, 2014-Ohio-4470, ¶ 21.

*Miklas v. Miklas*, 7th Dist. Belmont No. 14 BE 46, 2015-Ohio-3829, ¶ 22.

{¶20} In this case, appellant cannot affirmatively show that the trial court failed to conduct an independent analysis. This court has upheld similar judgment entries despite the trial courts' failure to make independent factual findings or references to specific objections.

{¶21} In *Kennedy v. Milton Twp. Bd. of Trustees*, 7th Dist. Mahoning No. 08 MA 263, 2010-Ohio-1405, ¶ 21, for instance, we upheld a judgment entry that stated in its entirety:

This matter came before the Court on Appellant's Objections to the Magistrate's Decision filed October 8, 2008, and Appellee, Milton Township's, Reply. The Court finds that no error of law or other defect appears on the face of the Magistrate's Decision. Appellant's Objections are overruled and the Magistrate's Decision is hereby affirmed and made the action, judgment and order of this Court. Therefore, Judgment is hereby entered as follows: This Court hereby upholds the decision of Milton Township Board of Zoning Appeals granting the Appellees, Donald and Linda Spence, a Variance. Appellant's Appeal to this Court is hereby dismissed. Costs to be taxed to the Appellant. This being no just cause for delay, Judgment is entered as above specified. This is a final, appealable order.

{¶22} We found the appellant did not affirmatively demonstrate that the trial court failed to consider the objections and that this court should therefore presume the regularity of the proceedings. *Id.* at ¶ 23. We pointed out that the trial court stated that

the matter came before it pursuant to objections, specifically overruled those objections, adopted the magistrate's decision, and entered judgment.  *Id.* at ¶ 25.

**{¶23}**  Similarly, in *Marafiote v. Estate of Marafiote*, 7th Dist. Mahoning No. 14 MA 0130, 2016-Ohio-4809, ¶ 31, we upheld a trial court's judgment that addressed the objections to a magistrate's decision that stated:  "The Court finds that there is no reason for an oral hearing on the issues presented in the objections and therefore declines to conduct a hearing. Civ.R. 53(4)(d). The Court has undertaken an independent review as to the objected matters to ascertain that the Magistrate has properly determined the factual issues and appropriately applied the law in consideration of this matter."  We noted that we previously found the cutting and pasting of a magistrate's decision into a judgment entry does not show mere rubber-stamping.  *Id.* at ¶ 32, citing *Ramos v. Khawli*, 181 Ohio App.3d 176, 2009-Ohio-798, 908 N.E.2d 495, ¶ 26 (7th Dist.), citing *Schmidli v. Schmidli*, 7th Dist. Belmont No. 02 BE 63, 2003-Ohio-3274, ¶ 16.  And we pointed out that the appellant failed to present anything to rebut the presumption that the trial court conducted the required independent analysis.  *Id.* at ¶ 33.

**{¶24}**  Appellant in this case has likewise failed to present any facts to rebut the presumption that the trial court conducted an independent review of the magistrate's decision.  Moreover, the trial court stated that in ruling on appellant's objections it considered the transcript from the three-day hearing, counsel's oral arguments, and all evidence admitted.  These considerations indicate an independent review.

**{¶25}**  While the better practice would arguably be for the trial court to specifically address the objections, we cannot conclude the trial court abused its discretion or failed to comply with Civ.R. 53(D)(4)(d) in this case.

**{¶26}**  Accordingly, appellant's first assignment of error is without merit and is overruled.

**{¶27}**  Appellant's second and third assignments of error both assert that the evidence does not support the trial court's judgment.  Thus, we will address them together.

**{¶28}**  Appellant's second assignment of error states:

THE MAGISTRATE'S DECISION AND COURT OF COMMON PLEAS AFFIRMATION OF THE DECISION IS [not] FACTUALLY SUPPORTED BY THE RECORD.

{¶29} Appellant's third assignment of error states:

THE LOWER COURTS' RULINGS DRAW CONCLUSIONS CONTRARY TO THE LAW IN THE STATE OF OHIO.

{¶30} Here appellant contends the trial court's decision is against the weight of the evidence. She contends there was no evidence that the children are in danger while in her care. Appellant notes that until April 2019, the children had been in her care since birth. She claims there was no evidence that she used drugs around the children, that the children were exposed to drugs, or that the children witnessed her boyfriend's overdose. She asserts the only expert witness to testify indicated that she did not have a drug addiction. Appellant further asserts there was no evidence that the children were ever in harm's way. Appellant claims the record lacks any evidence in support of modifying custody.

{¶31} R.C. 3109.04 guides a trial court's discretion in a custody modification proceeding. *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). A trial court's decision regarding the custody of a child which is supported by competent and credible evidence will not be reversed absent an abuse of discretion. *Bechtol v. Bechtol*, 49 Ohio St.3d 21, 550 N.E.2d 178 (1990), syllabus; *Rohrbaugh v. Rohrbaugh*, 136 Ohio App.3d 599, 603, 737 N.E.2d 551 (7th Dist. 2000). A trial court has broad discretionary powers in child custody proceedings. *Reynolds v. Goll*, 75 Ohio St.3d 121, 124, 661 N.E.2d 1008 (1996). This discretion should be accorded the utmost respect by a reviewing court in light of the gravity of the proceedings and the impact that a custody determination has on the parties involved. *Trickey v. Trickey*, 158 Ohio St. 9, 13, 106 N.E.2d 772 (1952).

{¶32} R.C. 3109.04(E)(1)(a)(iii) provides:

The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at

the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

* * *

(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

{¶33}   In determining a child's best interest either on an original decree allocating parental rights and responsibilities or on a modification of such a decree, the court shall consider all relevant factors, including, but not limited to:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has [ever been convicted of certain offenses or had a child adjudicated abused or neglected];

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

R.C. 3109.04(F)(1).

{¶34} Appellant's argument asserts that appellee was required to show that the children were in harm's way while in her care in order for the court to order a change of custody. But that is not the standard. Pursuant to R.C. 3109.04(E)(1)(a)(iii), the trial court had to find a change in circumstances, that a modification is in the best interest of the children, and the harm likely to be caused by a change of environment was outweighed by the advantages of the change of environment.

{¶35} The trial court found a change in circumstances had occurred since the parties' dissolution. It found that appellant's drug usage since the dissolution had clearly increased. It noted that appellant admitted to using marijuana and experimenting with methamphetamine. The court found this to be a bad example to set for the children. It opined that appellant's life appeared to be spinning out of control and that drug use was not appropriate, especially with three young children. The court also found that the harm likely to be caused by the change of environment was outweighed by the advantages of the change of environment.

{¶36} And while the trial court did not specifically address the best interest factors by name, it noted that R.C. 3109.04(E)(1) required that it find modification of the prior parenting order was in the children's best interest and it made numerous findings that corresponded with the statutory best interest factors.

{¶37} As to the wishes of the children's parents regarding their care (R.C. 3109.04(F)(1)(a)), the court noted appellant's objections to the magistrate's decision reallocating parental rights and responsibilities.

Case No. 20 JE 0014

**{¶38}** As to the children's interaction and relationship with their parents and other family members (R.C. 3109.04(F)(1)(c)), the court noted the following. Appellee testified the children get along well with his brother and family members who live nearby and help with the children while he is working. Appellee's girlfriend testified that appellee has a good relationship with the children. And appellant's boyfriend described appellant's relationship with the children as loving.

**{¶39}** As to the children's adjustment to the child's home, school, and community (R.C. 3109.04(F)(1)(d)), the court pointed out that the house appellee shares with his brother is large and well-kept and that the children have made a good adjustment to his home. It further found that appellee has enrolled the children in Buckeye Local School District and they appear to be doing well.

**{¶40}** As to the mental and physical health of all persons involved in the situation (R.C. 3109.04(F)(1)(e)), the court found that appellant submitted to a drug and alcohol assessment. It noted that the counselor who performed the evaluation found no pattern of abuse and did not observe any behavior indicating a drug addiction.

**{¶41}** As to the parent more likely to honor visitation and whether either parent has denied the other parent parenting time (R.C. 3109.04(F)(1)(f) and (i)), the court observed that appellant had filed for a civil protection order against appellee in West Virginia. The case was dismissed after a hearing. But while that matter was pending, it made visitation with the children more difficult. The court also pointed to appellant's testimony that she has had difficulty contacting the children by phone while they are with appellee and that one of her visits had not been made up.

**{¶42}** As to whether either parent has established a residence outside of Ohio (R.C. 3109.04(F)(1)(j)), the court failed to specifically mention that appellant now lives in West Virginia, although the testimony established this.

**{¶43}** As to the remaining factors, the trial court did not interview the children (R.C. 3109.04(F)(1)(b)), there was no testimony as to child support payments or arrearages (R.C. 3109.04(F)(1)(g)), and there was no testimony that either parent or members of their households has ever been convicted of any crimes or had a child adjudicated abused or neglected (R.C. 3109.04(F)(1)(h)).

**{¶44}** The evidence at the hearing supports the trial court's findings.

Case No. 20 JE 0014

{¶45}     Appellee testified that his work schedule is now different than it was at the time of the dissolution and allows him more time to be with the children. (9/6/19 Tr. 13). He opined that it was in the children's best interest that the court designate him as the residential parent. (9/6/19 Tr. 14).

{¶46}     As to the events causing him to the file the emergency motion, appellee stated that he learned appellant's boyfriend, Jason Waugh, had overdosed at her apartment while the children were present. (9/6/19 Tr. 16). He testified that appellant did not call to inform him of the overdose, but instead her mother notified him of what happened and that the children were at her house. (9/6/19 Tr. 17).

{¶47}     Appellee also testified that in January of the current year, appellant called him to pick up the children from her. (9/6/19 Tr. 19). He stated that appellant's brother had just been murdered and appellant was frantic because she did not know if she and the children were in danger. (9/6/19 Tr. 19). The murder occurred at appellant's mother's house. (9/6/19 Tr. 20). Appellee testified that appellant told him she was in fear because her brother kept a record book for his sale/distribution of marijuana and her name and phone number were in it. (9/6/19 Tr. 21-22). Appellant's drug use caused appellee concern. (9/6/19 Tr. 22). Appellee testified that less than a week after the murder, he was at appellant's father's house talking with appellant and she was smoking marijuana "to take the edge off." (9/6/19 Tr. 24-25). And he testified that appellant made numerous posts on social media regarding her drug usage. (9/6/19 Tr. 35-37).

{¶48}     Additionally, appellee testified that appellant moved three times in the year since the dissolution. (9/6/19 Tr. 27). He, on the other hand, has remained in the same house. (9/6/19 Tr. 27-28). And appellee stated that appellant had multiple phone numbers, and sometimes even no phone number, so that he had difficulty calling the children. (9/6/19 Tr. 28). Appellee also testified that appellant had three different boyfriends whom she introduced to the children in the year since the dissolution. (9/6/19 Tr. 29).

{¶49}     As to his home and family, appellee testified that he lives with his brother and the children love him. (9/6/19 Tr. 56-57). He further stated he has seven family members who all live nearby who can help him with child care if needed. (9/6/19 Tr. 57-58). Appellee stated that the children had adjusted to his home and their new school.

(9/6/19 Tr. 65). He testified that appellant currently lives 45 minutes away from him. (9/6/19 Tr. 61).

{¶50} Alexandria Dietz is appellee's girlfriend. She testified that the children are very close with appellee and appellee takes good care of them. (9/6/19 Tr.109-113). She gave examples of things they do together like secret handshakes and riding four-wheelers. (9/6/19 Tr. 110-111).

{¶51} Beth Ross is appellant's mother. She testified regarding the overdose incident. Ross stated that on the evening in question, appellant called her and told her that a friend of hers was unresponsive in her bathroom. (9/6/19 Tr. 129). Ross went to appellant's apartment and found Jason Waugh unresponsive in the bathroom. (9/6/19 Tr. 129). She stated she had met Waugh previously at appellant's home with the children. (9/6/19 Tr. 134). As to her son who was murdered, Ross testified that her son had been involved in selling drugs. (9/6/19 Tr. 135).

{¶52} Kylie Smail is appellant's sister. She testified regarding a series of text messages between her and her brother Logan (a different brother than the one who was murdered) about appellant. Smail testified that her brother Logan sent her a message that read: "I know what shes [sic.] on. I know the delusional thoughts that go through her mind when she's on it. . we can all agree that this is not her this is the addiction talking. . I have been there and I was there for years luckily I got out. . i [sic.] know every person shes [sic.] around and there's not a good one in the group. . I'm not saying that she will do that or that she is a threat i [sic.] am simply saying please at this point do not put anything past her." (9/9/19 Tr. 9). Smail stated that her brother sent this message shortly after the overdose at appellant's apartment. (9/9/19 Tr. 7). Smail further testified that after their brother's murder, appellant began to hang out with the wrong people and use drugs. (9/9/19 Tr. 14). Smail stated that appellant admitted to her that she used methamphetamine and that she needed help. (9/9/19 Tr. 14-15).

{¶53} Nancy Orr is the chemical dependency counselor who conducted appellant's court-ordered drug and alcohol assessment on July 9, 2019. Orr testified that she did not categorize appellant as having a pattern of drug abuse. (9/13/19 Tr. 9). She stated that appellant reported a one-time use of methamphetamine. (9/13/19 Tr. 18).

She also stated that appellant reported using marijuana for five years but that she had not used it in the last 30 days. (9/13/19 Tr. 23-24).

**{¶54}** Morgan Cantwell is appellant's boyfriend. He testified that appellant is a loving mother. (9/13/19 Tr. 45). He also testified that he only saw appellant smoke marijuana once. (9/13/19 Tr. 59-60).

**{¶55}** Appellant was the final witness. Appellant stated that she currently lives in West Virginia. (9/13/19 Tr. 62-63). As to Waugh, appellant stated that they knew each other from high school and reconnected on Facebook. (9/13/19 Tr. 81). She testified that Waugh's children are close in age to her children and they began spending a lot of time together with their children. (9/13/19 Tr. 82). Appellant stated that the relationship lasted approximately three weeks. (9/13/19 Tr. 83). She testified that they never used drugs in the children's presence. (9/13/19 Tr. 84). But appellant admitted she experimented with methamphetamine with Waugh while her children were with appellee for the weekend. (9/13/19 Tr. 84).

**{¶56}** Appellant testified that on April 19, 2019, she was in her car with Waugh and their children. (9/13/19 Tr. 86, 91). She was making a quick stop at her apartment to pick something up. (9/13/19 Tr. 86). She pulled into her driveway, left the car running with Waugh and the children in it, retrieved what she needed from her apartment, and went back to her car. (9/13/19 Tr. 88). Waugh then told her he needed to use the restroom. (9/13/19 Tr. 88). He went into her apartment while appellant stayed in the car with the children. (9/13/19 Tr. 88). After thinking that Waugh was taking a long time, she went in to check on him. (9/13/19 Tr. 88). Waugh looked "crazy" to her and was falling into her bathtub. (9/13/19 Tr. 88). She ran back outside, got the children out of the car, and called her mother. (9/13/19 Tr. 88). She brought the children inside. (9/13/19 Tr. 88). Once her mother arrived, appellant took the children to her neighbor's house. (9/13/19 Tr. 89). When she returned the EMTs and police were there. (9/13/19 Tr. 89). She was told that Waugh had to be revived with Narcan. (9/13/19 Tr. 139). Appellant stated that the children never saw Waugh in the bathroom. (9/13/19 Tr. 90). Appellant testified that she has not associated with Waugh since his overdose. (9/13/19 Tr. 96).

{¶57}   Appellant next testified that she wanted to be the children's residential parent.  (9/13/19 Tr. 98).  She stated that she has never been diagnosed with a drug addiction.  (9/13/19 Tr. 102).

{¶58}   Appellant also testified regarding her brother who was murdered.  She stated that she knew he sold marijuana and that she smoked marijuana with him.  (9/13/19 Tr. 118-119).  She admitted that she smoked marijuana during the time she was the children's residential parent.  (9/13/19 Tr. 123).

{¶59}   Appellant also stated that she was currently living in her third residence since the dissolution, which was approximately 15 months prior, and that she had not filed a notice of relocation with the court.  (9/13/19 Tr. 131).  And she stated that she had had three boyfriends in that same time period.  (9/13/19 Tr. 133).  She also admitted that her current boyfriend is still married.  (9/13/19 Tr. 138).

{¶60}   Finally, appellant admitted that since the dissolution, she got a large marijuana tattoo on her arm.  (9/13/19 Tr. 140, 150).  When asked how she would explain the tattoo to her children when they got older, she stated that marijuana would probably be legal by then.  (9/13/19 Tr. 150).

{¶61}   As can be seen from the above cited testimony, there was competent, credible evidence in support of the trial court's decision.  The evidence demonstrated a change in appellant's circumstances since the dissolution.   Since the dissolution, appellant had been smoking marijuana with her drug-dealing brother, experimenting with methamphetamine, had a large marijuana leaf tattooed on her arm, and spent time with a man who overdosed in her apartment while their children were outside in the car.  Since the overdose in appellant's apartment, appellee has had temporary custody of the children and the testimony indicated that they were well-adjusted to appellee's home.  Thus, there is no indication that the trial court abused its discretion in granting appellee's motion to reallocate parental rights and responsibilities.

{¶62}   Accordingly, appellant's second and third assignments of error are without merit and are overruled.

{¶63}   Appellant's fourth assignment of error states:

THE  LOWER  COURTS'  RULINGS  VIOLATED  DEFENDANT'S FIRST AMENDMENT RIGHT TO FREEDOM OF EXPRESSION.

Case No. 20 JE 0014

**{¶64}** In supporting the finding of a change in circumstances, the magistrate and the trial court found that appellant acknowledged that she used marijuana and that she experimented with methamphetamine. The court concluded: "This is not a good example for the children." The court went on to find:

> When questioned about the large marijuana tattoo [on her arm], she was not concerned that it was illegal. When asked what she would tell her children, she said "It will be legal in a couple of years". And then she stated that she would tell them "It was a decision I made". There seems to be no thought that it was inappropriate and no real concern for what impact it might have on the children.

(March 12, 2021 JE).

**{¶65}** In this assignment of error, appellant contends the magistrate imposed his personal moral judgment on her absent a showing of harm to the children. In particular, she points to the magistrate's finding that her choice of a large marijuana leaf tattoo could have an impact on the children. She claims her tattoo is protected by her right to free speech. She then makes a lengthy argument about freedom of speech and the First Amendment.

**{¶66}** The First Amendment to the United States Constitution provides that "Congress shall make no law * * * abridging the freedom of speech * * *." Per the Fourteenth Amendment, the First Amendment's Free Speech Clause is applicable against the states. *Bey v. Rasawehr*, 161 Ohio St.3d 79, 2020-Ohio-3301, 161 N.E.3d 529, ¶ 19, citing *Manhattan Community Access Corp. v. Halleck*, __ U.S. __, 139 U.S. 1921, 1928, 204 L.Ed.2d 405 (2019).

**{¶67}** The right to freedom of speech means that government does not have the power to restrict expression because of the expression's message, its ideas, its subject matter, or its content. *Bey*, at ¶ 20, quoting *Ashcroft v. Am. Civil Liberties Union*, 535 U.S. 564, 573, 122 S.Ct. 1700, 152 L.Ed.2d 771 (2002), quoting *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 65, 103 S.Ct. 2875, 77 L.Ed.2d. 469 (1983), quoting *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972).

{¶68} The First Amendment's right to freedom of speech is not implicated in a custody proceeding, as appellant seeks to do here. In a custody dispute we are not faced with the government restricting someone's expression. In this case, the court did not restrict appellant's freedom of expression. It simply observed that appellant's choice to tattoo a large drug symbol on her arm might not be the best example to set for her children.

{¶69} Appellant complains that the court was forcing its morals on her by judging her marijuana tattoo. But the issue in this case that precipitated appellee filing the motion for a reallocation of parental rights and responsibilities was appellant's association with a man who overdosed on drugs in her apartment with her children nearby. Much of the evidence at the hearing went to whether appellant had been using drugs or had associated with drug users since the parties' dissolution. The fact that she got a large marijuana leaf tattooed on her arm was evidence in support of her fondness of the drug.

{¶70} In considering the best interests of the children, the trial court shall consider "all relevant factors." R.C. 3109.04(F)(1). Evidence of appellant's marijuana use and whether she believed a marijuana leaf tattoo was appropriate for her children to see was relevant evidence in this case.

{¶71} Accordingly, appellant's fourth assignment of error is without merit and is overruled.

{¶72} Appellant's fifth assignment of error states:

THE MAGISTRATE'S RECOMMENDATION AND THE COURT OF COMMON PLEAS SUA SPONTE IMPLEMENTATION OF THE LONG DISTANCE COMPANIONSHIP WAS AN ABUSE OF DISCRETION, NOT SUPPORTED BY THE EVIDENCE, AND IS ACTUALLY HARMFUL TO THE CHILDREN'S RELATIONSHIP WITH THEIR MOTHER WITH WHOM THEY HAD SPENT EVERY DAY FROM THEIR BIRTH TO THE FRIVOLOUS MOTION FILED BY FATHER.

{¶73} Appellant's argument here is somewhat unclear. She takes issue with the "Long Distance Guidelines" and asserts there was no evidence these guidelines would serve the best interest of the children.

Case No. 20 JE 0014

{¶74}   We review a trial court's decision allocating parenting time for an abuse of discretion.  *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1988).

{¶75}   The parties did not present much evidence as to a visitation schedule. Appellee testified that the parties live a minimum of 45 minutes away from each other. (9/6/19 Tr. 61).  He did state that if he was the residential parent he would be able to accommodate visits every other weekend and every other Tuesday to Thursday.  (9/6/19 Tr. 61).  But if appellant was the residential parent he could not make that schedule work with his work schedule.  (9/6/19 Tr. 62-63).

{¶76}   The trial court determined that appellant would have parenting time the first, second, and fourth weekends of each month from 5:00 p.m. on Friday until 5:00 p.m. on Sunday.  It further stated appellant would have telephone calls with the children three nights per week.  And that holidays and summer vacations would be governed by the standard county guidelines.

{¶77}   The trial court's visitation order for appellant is substantially similar to the visitation order the parties had originally agreed to for appellee in the dissolution.  In that order, appellee had visitation for three weekends per month from 8:30 a.m. on Saturday until 5:30 p.m. on Sunday.  Under the trial court's visitation order for appellant, she actually gets an additional night of visitation that appellee did not have since her weekend visits begin on Friday evening instead of Saturday morning.

{¶78}   Given the fact that the parties live 45 minutes away from each other, we cannot conclude the trial court abused its discretion in implementing a weekend visitation order.  This order was similar to the order the parties had already been operating under, only now with appellee as the residential parent.  Moreover, the parties did not present extensive evidence regarding visitation.

{¶79}   Accordingly, appellant's fifth assignment of error is without merit and is overruled.

{¶80}   Appellant's sixth assignment of error states:

> THE CHILD SUPPORT SHOULD BE REFERRED TO CSEA FOR A PROPER DETERMINATION OF SUPPORT AFTER A RULING ON THIS APPEAL.

**{¶81}** In her final assignment of error, appellant simply states that neither party filed a financial affidavit, support has not been reviewed since the divorce, and a new child support formula is now in place.

**{¶82}** In response, appellee points out that the trial court calculated child support based on appellant earning minimum wage.

**{¶83}** We review matters concerning child support for abuse of discretion. *Pauly v. Pauly*, 80 Ohio St.3d 386, 390, 686 N.E.2d 1108 (1997); *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989).

**{¶84}** Pursuant to R.C. 3119.02, in any action where a court issues or modifies a child support order, the court "shall calculate the amount of the parents' child support and cash medical support in accordance with the basic child support schedule, the applicable worksheet, and the other provisions of Chapter 3119. of the Revised Code."

**{¶85}** Under the old shared parenting plan, appellee was paying child support to appellant of $750.01 per month plus $156.75 in cash medical support per month since health insurance was not reasonably available through either parties' employers.

**{¶86}** In its judgment entry reallocating parental rights and responsibilities, the trial court stated that it calculated child support based on appellant earning minimum wage. It also stated that it gave appellant a ten percent deviation due to her parenting time. The court ordered appellant to pay $156.46 per month in child support plus $25.50 in cash medical support per month.

**{¶87}** The trial court stated that it attached a copy of the child support worksheet to its judgment. But there is no worksheet attached. This is likely because the trial court copied the language of the magistrate's decision. There is a worksheet attached to the magistrate's decision.

**{¶88}** In this case, there was minimal evidence presented at the hearing as to the parties' income, health insurance, or other financial matters. The evidence was focused on whether there was a change in circumstances and the children's best interests. Appellee did testify that he earns approximately $50,000 per year. (96/19 Tr. 13). Appellant did not testify to her current income. Appellant testified that she currently works at the West Liberty Town Hall and at an Econo Lodge hotel. (9/13/19 Tr. 75-76).

{¶89}   The trial court in this case knew that appellant worked at West Liberty Town Hall and at a hotel.  And while appellant did not testify to her earnings, the court only imputed minimum wage to her.  Thus, we cannot conclude the trial court abused its discretion in ordering child support.

{¶90}   Accordingly, appellant's sixth assignment of error is without merit and is overruled.

{¶91}   For the reasons stated above, the trial court's judgment is hereby affirmed.


Waite, J., concurs.

D'Apolito, J., concurs.

———————————————

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Jefferson County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**